JOHN FEDOR, PLAINTIFF-APPELLANT, v. ISRAEL H. ALBERT, DEFENDANT-RESPONDENT.

Submitted February 17, 1933—Decided April 28, 1933.

For the plaintiff-appellant, *James J. McGoogan.*

For the defendant-respondent, *Albert B. Kahn* (*Nathan N. Schildkraut,* of counsel).

The opinion of the court was delivered by

CASE, J.   This is an appeal from a judgment of nonsuit granted at the Mercer Circuit by Judge Oliphant in an action

wherein the plaintiff, a stationary engineer, sought to recover for personal injuries suffered by him on the bursting of a tank sold by the defendant to plaintiff's employer, Woven Steel Hose and Rubber Company.

Defendant was a dealer in second-hand rubber machinery. Hermann, superintendent of the Woven Steel Hose and Rubber Company, went to defendant's place of business, was waited upon by defendant's son and negotiated for the purchase of a compressor. Hermann testified, "I told him we would use the compressor under conditions of about one hundred and twenty pounds," to which the salesman responded that defendant had or could procure a second-hand compressor and tank and that the tank "was good for three hundred pounds." After the sale had been completed and plaintiff's employer had accepted delivery of the apparatus, defendant's son was on the premises of plaintiff's employer and said to plaintiff who, in his capacity as engineer, was to have control of and responsibility for the operation of the apparatus and who was intending to subject the tank to a water test, "why do you want to test that way for? I tested that tank for three hundred pounds and it is bound to stand one hundred and twenty pounds pressure." Plaintiff, relying upon that remark, made no test of the tank. The apparatus remained on the employer's premises for a period of from one to two months, when plaintiff set it up, connected it with the machinery in conjunction with which it was to be used and undertook a trial operation. Important accessories that had been added to the tank were a gauge with an arrow indicator and a safety valve. It does not appear that these articles were a part of the apparatus furnished by the defendant. The fair inference is that they were not. Indeed, plaintiff's brief distinctly asserts that "appellant had fitted a gauge to the tank," and it is in the testimony that plaintiff had at least been working with the safety valve. Plaintiff, having adjusted the safety valve for discharge at one hundred and twenty pounds, began forcing the air into the tank, halting the increase of pressure at twenty-five, fifty, seventy-five, one hundred and one hundred and twenty pounds, respectively. At

one hundred and twenty pounds plaintiff decided to adjust the safety valve to a higher pressure. He testifies: "I climbed on that (viz., a big box set up as a scaffold) to adjust a bolt on the safety valve, so I had a wrench and was just climbing up over the safety valve which was on top of the air tank, I was just going to make it from three to five pounds ahead of the automatic cut-out. Finally it went bang."

The precise theory of the action was stated by plaintiff's attorney early in the trial thus: "This statement (viz., by defendant to plaintiff regarding the pressure capacity) was made to the man, to a member of the public, one about to use the machine, even before he put the test to it. That has nothing to do with the law of contract and consideration * * *. The basis of this suit, your honor, is not the sale at all, it is based on the duty of the defendant to furnish a safe appliance." That position is restated in appellant's brief which, as point one, asserts that "there is a duty owing by anyone, be he manufacturer or dealer, to the public to furnish reasonably safe appliances."

Where a duty arises solely out of contract no one can bring an action for its breach unless he be a party to the contract or one for whose benefit it is made. *Tomlinson* v. *Armour & Co.*, 75 *N. J. L.* 748, 755. To maintain an action of tort for breach of a contractual duty, the plaintiff must have the same status under the contract as would entitle him to maintain an action upon contract for a breach of its stipulations. *Styles* v. *Long Co.*, 67 *Id.* 413, 419; *Clyne* v. *Helmes,* 61 *Id.* 358, 364. There are cases in which a person selling goods, performing service or doing work under contract may be held in damages for injuries to third persons occasioned by negligence or misconduct connected with the execution of the contract; but these are cases where the duty or liability arises independent of the contract, and in such cases plaintiff must count upon a wrongful act or negligence—a tort as distinguished from a mere breach of contract. *Marvin Safe Co.* v. *Ward,* 46 *Id.* 19; *Heckel* v. *Ford Motor Co.,* 101 *Id.* 385. This court has sustained a duty and corresponding liability to third persons in cases having to do with the preparation

and sale of foods—the canning of meats by a packer (*Tomlinson* v. *Armour & Co., supra*), the preparation of bread by a baker (*DeGroat* v. *Ward Baking Co.*, 102 *Id.* 188), and the like. The underlying theory of this line of cases is that the canner or the manufacturer of food stuffs is under a duty to the ultimate consumer to exercise care that the food is wholesome and fit to be eaten. There is also the rule as to public duty charged in *Heckel* v. *Ford Motor Co., supra,* against the manufacturer of an appliance that will become highly dangerous when put up to the uses for which it is designed and intended, because of defects in its manufacture; which rule was, in *Martin* v. *The Studebaker Corp.*, 102 *Id.* 612, modified as to those who assemble, for the market, parts made by other manufacturers.

The theory upon which plaintiff rests is that the defendant was under the duty to the public to furnish a reasonably safe appliance. No authority is cited for such an obligation upon a dealer in second-hand machinery who, we conceive, is in a position quite different from that of a manufacturer or an original dealer. No knowledge by the defendant of a defect is charged or proved. The statement made by the defendant's salesman to the purchaser at the time of the sale was not disclosed to the plaintiff, and the latter was not put off his guard thereby. We think that the mere fact of the sale, standing by itself, of a compressed air tank by the defendant did not, under the circumstances of the case, create such a duty to the public, or to the plaintiff as a member of the public, as would hold the defendant to liability for injuries coming to the plaintiff because of a hidden defect of which the defendant was not shown to have had knowledge.

Moreover, plaintiff's proofs do not place him within the application of such an obligation as he asserts even if the rule could be stated so broadly and with such universal application; for he must of course prove his case. There is no proof of the care that had been given the tank during the period that it had been in the ownership and possession of plaintiff's employer or of what use or abuse it had been subjected to. Unless inferences may be drawn from the accident itself,

there is no denial that the son had in fact tested the tank to three hundred pounds or that at the time of the remark the tank was not capable of withstanding a pressure of one hundred and twenty pounds. There is no proof of what the accident really was, other than plaintiff's words, quoted above, "finally it went bang," and that the plaintiff was thrown and injured. There is complete silence as to what the defect was, where it was, whether or not it was at the points where plaintiff had attached the accessories, and as to the condition of any of the apparatus after the accident.

Plaintiff suggests, rather out of line with the theory upon which he rests, that the doctrine of *res ipsa loquitur* may be invoked to fasten liability upon the defendant. It has been frequently held in our cases that that principle may be applicable with respect to an "instrumentality or agency under the management or control of a defendant or his servants." *Mumma* v. *Easton and Amboy Railroad Co.,* 73 *N. J. L.* 653, 658; *Rapp* v. *Butler-Newark Bus Line,* 103 *Id.* 512; *Gilroy* v. *Standard Oil Co.,* 107 *Id.* 170. The apparatus was clearly not, at the time of the accident, under the management or control of the defendant or his servants; and although this requirement has recently been somewhat lessened (*Taylor* v. *Berner,* 106 *Id.* 469), the state of the proofs in the instant case is such that we conclude that the doctrine of *res ipsa loquitur* does not apply. In *Levendusky* v. *Empire Rubber Manufacturing Co.,* 84 *Id.* 698, it was said that the explosion of a steam boiler is not, *per se, prima facie* evidence of negligence.

It remains to consider whether the defendant assumed a special duty to the plaintiff for the breach of which defendant is liable. The statement by defendant's son directly to plaintiff, in reliance upon which the plaintiff omitted to test the tank, was made after the sale was complete and delivery had been made and accepted by the plaintiff's employer. It was not in fulfillment of, or dependent upon, any obligation from the defendant to either the employer or the plaintiff and, so far as the evidence discloses, it was both casual and voluntary. The legal situation is not affected by the blood relationship

between the son and the defendant. Defendant would not be liable for the son's words or acts except upon the theory of agency. Proof of agency, in this respect, is lacking, and therefore no special duty is chargeable against the defendant thereon.

Plaintiff had full knowledge of the danger of using a tank without first making test. It was a part of his duty to make tests. He knew how to make them safely. It was his practice always to test a tank, even when it was new and had come by delivery from the manufacturer with a plate showing the pressure it would withstand and when and by whom inspection had been made. The safe and usual test, as testified by plaintiff, is by subjecting a tank to gradually increased pressure by water. Despite this knowledge and this experience he not only omitted to make a test of this tank that he had heard was second-hand and that had come from a dealer in second-hand equipment, but even while giving the apparatus its first trial he purposely refrained from observing the effect on the tank because, as he said, "I was absolutely sure of the tank * * * I had trust in that that it was all right. * * * The tank was triple sure to carry the pressure we carry." There can be no doubt that these omissions by the defendant contributed to the accident.

We find that the defendant had not assumed a special duty to the plaintiff and that the trial court was correct in granting a nonsuit upon the grounds that no negligence or failure to perform any duty owing to the plaintiff had been shown against the defendant and that the plaintiff on his own case was shown to have been contributorily negligent.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 13.

*For reversal*—DONGES, J. 1.