SAMUEL KRAMER, PLAINTIFF-RESPONDENT, v. R. M. HOLLINGSHEAD CORPORATION, DEFENDANT-APPELLANT.

Argued September 25, 1950—Decided October 16, 1950.

*Mr. S. P. McCord, Jr.,* argued the cause for the appellant (*Messrs. Starr, Summerill & Davis,* attorneys).

*Mr. William Lipkin* argued the cause for the respondent (*Messrs. Lipkin, Neutze & Lipkin,* attorneys).

The opinion of the court was delivered by

ACKERSON, J.   The dispositive question presented by this appeal is the applicability of the doctrine of *res ipsa loquitur* to the following circumstances appearing in an agreed statement of facts in lieu of record.   *Rule* 1:2–22.

Plaintiff sued the defendant, manufacturer of a solvent known as "Motor-Tune-Up," in the Camden County District Court to recover for damage to the engine of his automobile resulting from an explosion alleged to have been caused by the negligence of the defendant in the manufacture of said product.

Judgment was entered in the trial court in favor of the plaintiff upon a finding that the doctrine of *res ipsa loquitur* applied.   On appeal, the Appellate Division of the Superior Court affirmed the judgment below and certification has been granted.

The matter is before us on the following stipulated facts as they appear in the agreed statement:

"The plaintiff was the owner of a Buick sedan, * * *, year 1942. Said car was purchased by plaintiff in November, 1947.   The mileage indicated on the speedometer was 46,377 at the time of the accident in question.   The plaintiff's car was in the shop of Davis Buick Company, * * *, Philadelphia, in February, 1948, for repair to gas lines, and necessary repairs to the rear; March, 1948, lubrication, change of oil, new plugs and correction of oil leak; April, 1948, repair

oil flow, rocker arm and one push rod; May, 1948, lubricate, tune motor and State inspection. The plaintiff testified that the automobile had been tuned up the week before and, with the exception of some carbon which the mechanic told him existed in the motor, it had been running exceptionally fine. The plaintiff further testified that he purchased a can of 'Motor-Tune-Up' on Saturday, the 26th day of June, 1948. The following morning he took the automobile from his garage and drove to a vacant lot, approximately five (5) squares from his home, and allowing the motor to run he took the can of 'Motor-Tune-Up', broke the seal and then, following directions, he poured a 7 ounce glass of the solvent into the carburetor, then he shut the motor off and allowed it to cool off for about 20 minutes. He then turned on the switch, started the motor; there was an immediate explosion damaging the entire motor, and it was necessary for him to replace same with a new motor, the value of which was stipulated to be $438.50. It was stipulated at the trial that the plaintiff's wife would testify the same as the plaintiff. The plaintiff testified unequivocally that the motor had given no indication of being defective at any time previous to the introduction of this solvent into the motor, with the exception that on previous occasions he had used the solvent with success to clear out excess carbon."

No further proof was offered by the plaintiff. Defendant's motion for an involuntary dismissal at this juncture of the case was reserved by the court but subsequently denied by the court's findings.

The statement of facts further discloses that the defendant, in rebuttal, produced the chemist who evolved the formula for making the solvent and he testified that he had secured from the plaintiff a sample of the contents of the container used by the latter on this occasion and had made a test to compare this product as against the usual product manufactured. He testified that the contents of the can purchased and used by the plaintiff, after being put through the various tests in the control laboratory of the defendant company, met all of the manufacturing standards set by the defendant. He further testified that he knew of nothing in the solvent that could have caused the explosion. This was the only evidence before the court upon the chemical properties of the solvent. Another chemist produced by the defendant outlined the care and caution exercised by the defendant in the preparation of the product and sealing it in the containers for public use.

On these facts the trial judge, sitting without a jury, held that "* * * the inference of negligence raised by the explosion immediately following the application of the solvent raises a question for the trier of the facts and would justify finding in favor of the plaintiff. The doctrine of *res ipsa loquitur* is applicable." Judgment was entered in favor of the plaintiff for the stipulated sum and the Appellate Division affirmed on the same ground.

The defendant argues that the doctrine of *res ipsa loquitur* was erroneously applied to the facts of this case.

The tests for determining whether or not the doctrine is applicable in a given situation have been expressed in several cases recently decided by this court. In *Menth v. Breeze Corporation, Inc.*, 4 *N. J.* 428 (1950), at *pp.* 436, 437, the rule was stated as follows: "It is also essential to the application of the *res ipsa loquitur* doctrine that those seeking to obtain the benefit of its presumptive effect must show that in all probability the direct cause of the injury and so much of the surrounding circumstances essential to its occurrence were in the exclusive control of the defendant, or his agents or servants."

In other words, the instrumentality or thing causing the mischief must be shown to have been in all probability an agency under the sole control of the defendant, his employees or agents. *Hamrah v. Clements*, 3 *N. J.* 285, 289 (1950); *Oelschlaeger v. Hahne & Co.*, 2 *N. J.* 490, 494 (1949); *Menth v. Breeze Corporation, Inc., supra*.

In applying the rule to the facts before the court in the case of *Hamrah v. Clements, supra*, at *p.* 289, the court said: "Therefore, in the case *sub judice*, before the question of control could have become an issue, it was necessary for the plaintiffs to show that in all probability the installation of this oil burning unit in the existing furnace was the agency through which the fire started."

What agency actually caused the explosion in the plaintiff's car is unknown in the present case and therefore the essential factor of exclusive control has no basis upon which to rest.

Plaintiff argues, however, that since the automobile had been running well with no apparent defect after having been "tuned up" the week before the explosion, the introduction of the solvent into the motor must have been the sole cause of the explosion, thus permitting the invocation of the doctrine of *res ipsa loquitur*.

We are unable to agree with this conclusion on the record before us, and the decisions relied upon by the plaintiff and cited in the opinion below to sustain the application of this doctrine, *i. e., MacPherson v. Canada Dry Ginger Ale, Inc.*, 129 *N. J. L.* 365 (*Sup. Ct.* 1943); *Taylor v. Berner, 7 N. J. Misc.* 597 (*Sup. Ct.* 1929); reversed on other grounds, 106 *N. J. L.* 469 (*E. & A.* 1929); *Markowitz v. Liebert & Obert,* 23 *N. J. Misc.* 281 (*Sup. Ct.* 1945); *Dillon v. William S. Scull Co.,* 164 *Pa. Super.* 365, 64 *A.* 2d 525 (*Pa. Super. Ct.* 1949); *Smith v. Kirby,* 115 *N. J. L.* 225 (*E. & A.* 1935); *Cicero v. Nelson Transportation Co., Inc.,* 129 *Id.* 493 (*Sup. Ct.* 1943); *Rozumailski v. Philadelphia Coca-Cola Bottling Co.,* 296 *Pa.* 114, 145 *A.* 700 (*Pa. Sup. Ct.* 1929), are clearly distinguishable upon their facts from those existing in the case *sub judice*.

The first four of these cases fall within the category of the "exploding bottle cases" where the explosions occurred solely because of forces generated wholly within sealed containers, and the contents thereof, by reason of being sealed in, were considered for all practical purposes as continuing within the exclusive control of the manufacturers or bottlers up to the time of the explosions which emanated from within the containers themselves. In the other cases the injuries complained of were clearly shown to have resulted solely from substances or instrumentalities within the exclusive control of the defendants.

The doctrine relied upon by the plaintiff proceeds upon the theory that in the ordinary course of things, the occurrence would not have taken place if the person in control were exercising due care. *Grugan v. Shore Hotels Finance, etc., Corp.,* 126 *N. J. L.* 257, 262 (*E. & A.* 1940). In the present case,

however, the explosion did not take place within the can containing the solvent but within the motor which was at all times under the sole control of the plaintiff. It was not until the ignition was turned on fully twenty minutes after the plaintiff had broken the seal and poured some of the liquid contents of the can into the motor, during which period the motor had been allowed to cool off, that the explosion occurred, thereby leading to the reasonable inference that other causes than the elements within the solvent itself, and not within the defendant's exclusive control, may have caused or contributed to the explosion. There is no proof that the solvent was dangerous *per se,* nor that it alone was responsible for the accident. It is equally probable that the explosion was due to some mechanical defect within the automobile itself, particularly with reference to the application of the spark in the process of ignition, the mixture of air and gasoline in the carburetor, or some defect in the oil or gas distribution. Indeed the record discloses a number of repairs were made to these parts of the car between February and May, 1948. The car was second-hand and had seen considerable service. Parenthetically, plaintiff does not allege that the solvent was of such a nature that its introduction into a motor in a state of disrepair would be fraught with danger, such as would place the manufacturer under a duty to warn the user against such danger. There are two other factors negating the claim that the defendant's product alone was the agency that caused the mischief. One is the evidence showing that the plaintiff had used the "Motor-Tune-Up" fluid on other occasions with success and the other is the testimony of defendant's expert that he knew of nothing in the solvent that could have caused the explosion which testimony stands uncontradicted. Furthermore the fact that on the occasion in question the plaintiff took the car from his garage and drove it to an empty lot approximately five squares away and there poured the solvent into the carburetor is susceptible of the inference that he feared the possibility of danger from applying the solvent to the motor in its existing condition, since on other occasions

he had used the same brand of solvent successfully to clean out excess carbon.

Obviously, on the record before us, the plaintiff has failed to meet the required test of showing that in all probability the direct cause of the explosion and so much of the surrounding circumstances essential to its occurrence were in the exclusive control of the defendant. *Menth v. Breeze Corporation, Inc., supra.* The mere happening of an explosion does not set the doctrine of *res ipsa loquitur* in operation; the explosion itself did not bespeak the defendant's negligence. *Oelschlaeger v. Hahne & Co., supra, p.* 494; *Dunn v. Hoffman Beverage Co.,* 126 *N. J. L.* 556, 561 (*E. & A.* 1941); *Noonan v. Great Atlantic, etc., Tea Co.,* 104 *Id.* 136, 138 (*E. & A.* 1927).

In the instant case the plaintiff could have procured a chemical analysis of that portion of the contents of the can remaining in his possession after the explosion in an attempt to show that the solvent had explosive properties. Doubtless he also could have produced the mechanics who, according to the stipulation, had worked recently on his automobile and who likely were in a position to testify concerning the condition of the motor, in an effort to show that its condition was not the cause, nor a contributing cause, of the explosion. He failed to do either or to account for such failure. Under these circumstances the plaintiff has not met the tests laid down in *Bahr v. Lombard, Ayres & Co.,* 53 *N. J. L.* 233, 239-240 (*E. & A.* 1890), and *Levendusky v. Empire Rubber Mfg. Co.,* 84 *Id.* 698, 700 (*E. & A.* 1913), to enable him to invoke the *res ipsa loquitur* doctrine.

All of the foregoing considerations lead us to the conclusion that the doctrine of *res ipsa loquitur* was inappropriately applied to the stipulated facts.

The judgment below is reversed and the cause remanded for a trial *de novo.*

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For affirmance*—Justice WACHENFELD—1.