10 N.J. Super. 116 (1950)
76 A.2d 686
GERTRUDE ALSTON, PLAINTIFF-RESPONDENT,
v.
J.L. PRESCOTT COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1950.
Decided November 10, 1950.
*117 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Thomas F. Meehan argued the cause for the appellant (Meehan Brothers, attorneys).
Mr. Seymour B. Jacobs argued the cause for the respondent (Mr. Fred Freeman, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
This appeal implicates a judgment entered in the Superior Court, Law Division, upon the verdict of a jury in favor of the plaintiff with an award of $1,500 damages.
The factual circumstances of the mishap out of which the litigation arose may be summarized. The plaintiff was a domestic servant in the employ of Mr. and Mrs. Abramson at their residence in Bayonne. On September 4, 1947, Mrs. Abramson by means of a telephone communication purchased *118 from a neighborhood grocer some quart bottles of a laundry fluid manufactured and bottled by the defendant and distributed for sale under the trade name "Dazzle." Upon the copious label which surrounds the bottle and which itself is somewhat "dazzling" appears the admonition "Keep in a Cool Place." The liquid was in the present instance confined in the bottle by the defendant by means of a rubber stopper.
The bottles were accordingly delivered by the employee of the grocer to the Abramson residence and promptly placed in a closet situate in the cellar of the residence. The following day, September 5, 1947, the plaintiff was requested by Mrs. Abramson to bleach some articles, and in undertaking that pursuit she removed a bottle of "Dazzle" from the shelf of the closet and had no more than started to dislodge the rubber stopper when it was suddenly expelled by internal pressure from the top of the bottle, instantly followed by the ejection of a large portion of the liquid contents of the bottle, some of which entered the plaintiff's eyes. The glass bottle itself was not fractured.
It was voluntarily divulged at the trial that at some time indefinitely stated in the record, but perhaps immediately subsequent to the occurrence of the mishap, the defendant substituted metal caps with air vents on its bottles in place of the rubber stoppers.
It is asserted by the appellant that the denials of the motions for a dismissal of the action and for a judgment for the defendant were erroneous.
It is evident that, at the trial, the plaintiff sought to utilize the aid of the doctrine or rule of res ipsa loquitur. The application of the so-called doctrinal function of that rule of evidence to the circumstances of the present case is the predominant controversial issue of this appeal.
The legal concept which many centuries ago assumed the name res ipsa loquitur and which Professor Wigmore has chosen to distinguish in our law of evidence as "Antopic Proference" has been the subject of countless pages of diagnostic and discriminative comment.
*119 Whether it is to be regarded as a doctrine, a principle, a maxim indicative of proof by circumstantial evidence, a rule of substantive or adjective law, a presumption of negligence or merely a prima facie inference are some of the characteristics concerning which a conspicuous diversity of opinion is discoverable in the English and American cases and among the competent contributors to the law reviews.
Let the inquisitive consult: Professor Prosser's "Res Ipsa Loquitur," 10 So. Cal. L. Rev. 459 (1937), in reply to Professor Carpenter's article in 10 So. Cal. L. Rev. 166 (1937); Kocourek's "Substance and Procedure," 10 Fordham L. Rev. 157 (1941); Morgan, "Presumptions," 12 Wash. L. Rev. 255, 279 (1937); Reaugh, "Presumptions and the Burden of Proof," 36 Ill. L. Rev. 703, 824 (1942); Bohlen, "The Effect of Rebuttable Presumptions of Law Upon Burden of Proof," 68 Univ. Pa. L. Rev. 307 et seq. (1920); Thayer, "Presumptions and the Law of Evidence," 3 Harv. L. Rev. 141 (1889); Shain's work on Res Ipsa Loquitur (1945); the opinion of Justice Erle in Scott v. The London, &c., Docks Co., 159 Eng. Rep. 665 (1865), and the opinion of Justice Pitney in Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815 (1913); Professor Prosser's article in 20 Minn. L. Rev. 271 (1936); Wigmore on Evidence (3rd Ed. 1940) 377, § 2509; and Hughes v. Atlantic City, &c., R.R. Co., 85 N.J.L. 212, 89 A. 769 (E. & A. 1914).
But in the consideration of the present case, we must return home and abide by or distinguish the decisions of our own jurisdiction.
Our courts have uniformly said: "This principle is that when through any instrumentality or agency under the management or control of a defendant or his servants there is an occurrence, injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords prima facie evidence that there was want of due care." Mumma v. Easton and Amboy R.R. Co., 73 N.J.L. 653, 65 A. 208 (E. & A. 1906).
*120 A reading of the relatively recent decisions in this as well as in other jurisdictions discloses that the controversial issues have not arisen so often from a misunderstanding of the rule of evidence (such our own courts regard it to be), as from the problematical application of the rule to the borderline circumstances of the given case.
The progressive technological developments in modern times are introducing many new devices and operational methods which were unknown to past generations, thus broadening the field to which the applicability of the so-called doctrine is to be determined. It has been pointed out in the consideration of res ipsa loquitur that in addition to the fact of the accident and the surrounding circumstances, the tribunal has before it a great body of additional matter in the shape of common knowledge and experience. 1 Jones on Evidence (4th Ed. 1938) 38; Ezra Thayer, "Liability Without Fault," 29 Harv. L. Rev. 801, 807 (1916).
True, it requires more than proof of the mere occurrence of an accident to set the rule in operation.
If we attempt to catalogue the present case among the numerous, it would seem appropriately to drop in the category of the "exploding bottle cases." Such adjudications within this jurisdiction are: Noonan v. Great Atlantic, &c., Tea Co., 104 N.J.L. 136, 139 A. 9 (E. & A. 1927); Taylor v. Berner, 7 N.J. Misc. 597, 146 A. 674 (Sup. Ct. 1929); reversed on other grounds, 106 N.J.L. 469, 150 A. 371 (E. & A. 1929); Dunn v. Hoffman Beverage Co., 126 N.J.L. 556, 20 A.2d 352 (E. & A. 1941); MacPherson v. Canada Dry Ginger Ale, Inc., 129 N.J.L. 365, 29 A.2d 868 (Sup. Ct. 1943); Markowitz v. Liebert & Obert, 23 N.J. Misc. 281, 43 A.2d 794 (Sup. Ct. Comm'r 1945); Woschenko v. C. Schmidt & Sons, 2 N.J. 269, 66 A.2d 159 (1949). Cf. Kramer v. R.M. Hollingshead Corp., 5 N.J. 386, 75 A.2d 861 (Sup. Ct. 1950).
Perhaps it ought to be conceded that in respect of the manifestation of carelessness the exploding bottle cases are to be distinguished from those where the person with a delicate *121 stomach belatedly discovers a piece of a suspender in his beverage, Rudolph v. Coca-Cola Bottling Co., 4 N.J. Misc. 318, 132 A. 508 (Sup. Ct. 1926), or a splinter of wood in his favorite cruller, cf. Danker v. Fischer Baking Co., 5 N.J. Super. 248, 68 A.2d 774 (App. Div. 1949), or a fragment of glass in his baked muffin, cf. McKittrick v. Dugan Brothers of N.J., 119 N.J.L. 605, 197 A. 905 (Sup. Ct. 1938), affirmed, 121 N.J.L. 49, 1 A.2d 331 (E. & A. 1938), or where the commodity is inherently dangerous and known to be such. Hopper v. Charles Cooper & Co., 104 N.J.L. 93, 139 A. 19 (E. & A. 1927). But Butler spoke of dividing "a hair 'twixt south and south west side."
In the bottle cases the elements normally engaging consideration are whether the container in respect to the injurious defect continued to be under the management and control of the bottler (Dunn v. Hoffman Beverage Co., supra), and whether it was reasonably probable in all the circumstances disclosed that the dereliction of the bottler in the performance of the undertaking which he assumed, was the proximate cause of the injurious occurrence. Kramer v. R.M. Hollingshead Corp., supra.
No perplexity ordinarily arises with respect to the first element where the manufacturer or bottler delivers the product in its container directly to the plaintiff. No problematical hesitation arises with respect to the second element where the explosion is more rationally than otherwise attributable to excessive pressure within the receptacle itself.
In the case presently under scrutiny it is inferentially evident that some gaseous efflux from within the bottle forcibly expelled the stopper and in an extraordinary and perhaps in a natural spontaneous manner agitated the liquid contents.
The defendant acknowledged that it manufactured the ingredients of the bottle, was aware of its susceptibilities, chose the type of container in which it was indiscriminately to be marketed, and subjected to its intended use.
The pivotal question appertains to whether in the present case the bottle continued to be under the management or control *122 of the defendant at the time of the accident within the modernly expanded scope of the rule of res ipsa loquitur.
A reminiscence of the reported decisions in our own jurisdiction is primarily expedient.
In Noonan v. Great Atlantic, &c., Tea Co., supra, the bottle of ginger ale was not the product of the defendant. In MacPherson v. Canada Dry Ginger Ale, Inc., supra, the court stated: "Although the proofs in the present case show that the defendant made delivery of the bottle which exploded and placed it in the storage room, there is no proof as to when delivery was made of the offending bottle. Purchases had been made as required during the season. The testimony, however, showed that due care had been used at all times and that none but the proprietor of the business and the employee had access to the storage room after delivery of the product. The case was one of fact. The trier of the facts was at liberty to accept the testimony of due care in subsequent handling and rest a verdict thereon.
"The proofs brought the case within the rule of Taylor v. Berner, supra, and do not show the long period of handling and rehandling which happened in the case of Dunn v. Hoffman Beverage Co., 126 N.J.L. 556."
The decisions in Woschenko v. C. Schmidt & Sons, supra, and in Kramer v. R.M. Hollingshead Corp., supra, turned principally upon the existence of another palpable and efficient agency intervening between the defendant's presumed dereliction and the injury.
These excerpts from the opinion in Taylor v. Berner, supra, invite attention: "The actions were to recover damages for injuries received by Susie Taylor, one of the plaintiffs, from the explosion of a bottle containing vichy, which had been sold and delivered to the plaintiff's employer by the defendant-appellant. While not the manufacturer of the vichy, the defendant was engaged in the bottling business, and as part of such business had filled the bottle, which, on the occasion in question, exploded.

* * * * * * *
*123 "The refusal of the motions for nonsuit and the motions for the direction of verdicts for the defendant were properly refused. The defendant, as a bottler, was obliged to use reasonable care in the filling of the bottle of vichy. With the exercise of reasonable care it is obvious that an explosion, such as here occurred, does not ordinarily result. This being true, we think the rule of res ipsa loquitur applied, and that it was permissible for the jury to infer from the occurrence of the explosion want of such reasonable care. The proofs presented by the defendant did not remove the cases from the consideration of that body. Hughes v. Atlantic City Railroad, 85 N.J.L. 212."
The observations of Justice Burling expressed by him as Supreme Court Commissioner in 1945 in Markowitz v. Liebert & Obert, supra, are recognized: "It is alleged by the plaintiff that he went to the place of business of the defendant Samuel Frankinstein, trading as City Beverage Co., for the purpose of purchasing a case of defendant's Liebert and Obert beer known under the trade name of Cooper's Beer, and that while on the premises of the said defendant Samuel Frankinstein, in the City of Atlantic City, County of Atlantic and State of New Jersey, in the act of bending over for the purpose of picking up said case, one of the bottles exploded, causing injury to him. * * *
"From which it appears that part of the proof is requisite evidence of the exercise of due care by others in this class of cases during the period of lack of possession of the exploding bottle."
In Dunn v. Hoffman Beverage Co., supra, it became evident that the bottle of sarsaparilla had after its purchase from the tavern been transported in the trunk compartment of an automobile a distance of thirty miles, "of which twenty miles was over a good macadam road, about ten miles over a good dirt road and about one and one-half miles over a poor, rough but passable one-way road." In sustaining a directed verdict for the defendant, the decision emphasized that "the thing *124 causing the accident must have been under the control of the defendant or his servant at the time of the accident."
Res ipsa loquitur is certainly in all jurisdictions a common sense appraisal of the probative value of circumstantial evidence, and it is true that circumstantial evidence is ineffectual where the circumstances are equally consistent with freedom from wrong, and fail to reveal at least the probability that the particular injurious mishap would not have occurred without the culpable carelessness of the defendant. Vide, Galbraith v. Busch, 267 N.Y. 230, 234, 196 N.E. 36 (Ct. of A. 1935).
And so, it may be confidently stated that in the bottled beverage and food container cases the circumstance that the container had departed from the physical custody and control of the bottler or manufacturer induced the majority of the courts to conclude that the rule of res ipsa loquitur was unavailable to the party injured by the bursting or breaking of such containers. Stone v. VanNoy R. News Co., 153 Ky. 240, 154 S.W. 1092 (1913); Wheeler v. Laurel Bottling Works, 111 Miss. 442, 71 So. 743 (1916); Cashwell v. Fayetteville Pepsi-Cola Bottling Works, 174 N.C. 324, 93 S.E. 901 (1917). More recent illustrative cases in other jurisdictions are: Alagood v. Coca Cola Bottling Co., 135 S.W.2d 1056 (Tex. Ct. App. 1940); Ruffin v. Coca Cola Bottling Co., 311 Mass. 514, 42 N.E.2d 259 (1942); Seven-Up Bottling Co. v. Gretes, 182 Va. 138, 27 S.E.2d 925 (1943); Honea v. City Dairy, 22 Cal.2d 614, 140 P.2d 369 (1943); Stodder v. Coca Cola Bottling Plants, 48 A.2d 622 (Me. 1947).
While the modern tendency to liberalize the availability of the res ipsa rule in such cases has not yet become generally conspicuous, it is at least perceptible in some jurisdictions, notably in the adoption of the North Carolina rule where the occurrence of similar accidents within a proximate range of time may be shown, Dail v. Taylor, 151 N.C. 284, 66 S.E. 135 (1909), or the theory that the control required over the instrumentality causing the injury does not refer to control at the time of the injury, but to control at the time of the *125 inferential negligent act or omission. Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436 (1944).
Our former Court of Errors and Appeals in Fedor v. Albert, 110 N.J.L. 493, 497, 166 A. 191 (1933), recognized that the requirement that the instrumentality must be shown to have been under the management or control of the defendant or his servants at the time of the accident "has recently been somewhat lessened."
And then comes to our notice the recent decision of our Supreme Court in Kramer v. Hollingshead Corp., supra, in which appears the following comment: "The first four of these cases fall within the category of the `exploding bottle cases' where the explosions occurred solely because of forces generated wholly within sealed containers, and the contents thereof, by reason of being sealed in, were considered for all practical purposes as continuing within the exclusive control of the manufacturers or bottlers up to the time of the explosions which emanated from within the containers themselves."
The comment in the Kramer case seems to suggest the recognition of a theoretical constructive control. Such would appear to be a more reasonable attribution. The rule, if it is to continue to live in the environment of the present and future generations ought not to be recognized as a rigid and arbitrary formula but rather a pragmatical rule that adjusts itself to existing conditions and circumstances.
The notion that a manufacturer and bottler who is under the legal duty to exercise reasonable care in the pursuit of its part of that commercial enterprise for the safety of those who are anticipated to devote the product to its intended use, in the absence of any other explanatory probability can annihilate the probative or inferential function of the rule of res ipsa loquitur by merely disclosing that the article has since its preparation for sale been successively in the possession of a commission merchant or wholesale distributor and retailer before reaching the plaintiff, seems in view of the activities and experiences of the modern age somewhat absurd. This is particularly so in the absence of any evidence, circumstantial *126 or otherwise, that the container in the course of its itinerary was subjected to any misuse.
In such cases it must be acknowledged that the cardinal and basic question is whether there was negligence by the defendant bottler while the product was under its exclusive control and whether such negligence was the proximate cause of the plaintiff's injury. The res ipsa rule never did mean that "the thing causing the accident" was the accident but that the accident supplied a prima facie glimpse of the "thing" that caused it. Vide, Goldman & Freiman Bottling Co. v. Sindell, 140 Md. 488, 117 A. 866 (1922); Fisher v. Washington Coca Cola Bottling Works, Inc., 84 F.2d 261 (1936).
In the case at bar the learned trial judge reserved decision of the motion for a dismissal of the action made at the conclusion of the plaintiff's evidence. Whereupon it was divulged by the defendant's witnesses that the defendant compounds the laundry fluid known as "Dazzle" which is composed of water, sodium hypochlorite, and liquid chlorine. The bottles having been filled with the fluid to a specified level pass by means of a conveyor beneath a corking wheel which descends and compresses the rubber stopper into the neck of the bottle.
It is denied that the fluid so confined in a bottle is inherently dangerous. Whether the use of a solid rubber stopper rather than, for example, a metal cap affording a vent for the escape of emanating gases was prudent or imprudent was not definitely established.
It is evident, however, that the defendant was aware that as "the sodium hypochlorite breaks down" it "gives out oxygen. That is what does the bleaching," and "when it gives off oxygen then there is a greater pressure inside the bottle than the atmospheric pressure outside the bottle," and "we get progressively more rapid action as the temperature increases" over "a certain temperature." "What temperature?" "I don't know just what temperature." "You do not say anything on your label about what temperature would be considered cool and which ____" "No, we do not." "You leave that up to the general public to determine for themselves?" *127 "It would seem so." The defendant did not contribute any probable explanation of the cause of the accident. There was no evidence from which it could be logically inferred that the bottle had been subjected to any immoderate heat.
The plaintiff testified that she "noticed nothing unusual about the bottle." Her description of the occurrence is, "I had the bottle of Dazzle in one hand and I started to pull the cork out when it blew up in my face. It seemed like an explosion or something, it just went right up, pop, and went into my eyes and face and blinded me."
In such a case we examine the circumstances disclosed within the field of the evidence adduced at the trial in search of the reasonable probabilities and dismiss the imaginary possibilities.
In the present case the predominant, if not the only, probable cause of the accident was the abnormal and unusual pressure within the bottle. The defendant acknowledges that it has exclusive control and management over the preparation of the bottle and its contents for delivery in the regular course of its business. Joly v. Jones, 115 Vt. 174, 55 A.2d 181 (Sup. Ct. 1947).
If, as here, the bottle is not shown to have been defective, it seems to us that the inference is strengthened that the defendant was negligent in filling it with a chemical liquid that would develop increased pressure to a dangerous degree after its delivery in the usual and anticipated course of trade. The circumstances of such a dereliction of duty should have been within the knowledge of the defendant and could not have been within the knowledge of the plaintiff.
We resolve that in the absence of any proof of an intervening probable cause disassociated from the inference of negligence on the part of the defendant, the rule of res ipsa loquitur applied to the unelucidated facts disclosed by the evidence in this case; that the action of the trial court in denying the motions for a dismissal and for a directed judgment for the defendant was without error; that the plaintiff *128 presented a prima facie case properly to have been submitted to the jury; and that the charge delivered to the jury was unexceptionable.
The judgment is affirmed with costs.