13 N.J. Super. 439 (1951)
80 A.2d 629
HANS LEVY, PLAINTIFF-APPELLANT,
v.
KIDDE MANUFACTURING COMPANY, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 7, 1951.
Decided May 15, 1951.
*440 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Edward S. Miller argued the cause for appellant (Mr. Harry Adler, attorney).
Mr. William G. Bischoff argued the cause for respondent (Messrs. Carroll, Taylor & Bischoff, attorneys).
*441 The opinion of the court was delivered by JAYNE, J.A.D.
The controversial question engaging our consideration in the present appeal arises from the insistence of counsel for the plaintiff-appellant that the doctrine of res ipsa loquitur operated to raise an inference of the defendant's negligence, thus presenting a factual issue which should have been submitted to the jury for determination. At the conclusion of the introduction of evidence at the trial, which occurred on November 30, 1950, the judge in the instant case directed the jury to render a verdict of no cause for action. But see Rule 3:50, amended November 10, 1949. Pursuant to the direction the verdict was rendered and a judgment entered for the defendant.
In its basic relationship to the point now debated, the factual narrative derived from the evidence adduced on behalf of the plaintiff is interesting.
Sometime between the years 1940 and 1945 a merchant conducting a store in the city of Bridgeton, Cumberland County, for the sale at retail of hardware, housewares, and sporting goods, purchased from a distributor a carbonating vessel known as a "Soda King Syphon," a product manufactured by the defendant. The merchant testified that upon its receipt he unpacked and examined it, and finding that it appeared to be in "perfect condition," he placed it in a conspicuous position on one of the shelves in his store where it remained unused and uninjured until its sale with the associated package of carbon dioxide cartridges to the plaintiff on May 28, 1949.
In its external aspects the device resembles in size and shape the general appearance of a thermos bottle. It consists of two major parts. The bottom is designed to be filled with liquid. The top provides for the insertion of the charging cartridge in a cylinder located inside. The syphon is completely assembled by engaging the threads of the top and bottom parts and by turning the top downward one and one-half revolutions. Accompanying the article were the following instructions for its use:

*442 "HOW TO OPERATE YOUR SODA KING
1  Unscrew head of Syphon and fill bottle to the top with cold water  the colder the better.
2  Drop in four or five ice cubes. No more than five.
3  Unscrew cap on charge holder inside of the head of the Syphon. (See figure B.)
4  Place a SODA KING Super-Charger in the charge holder with small end pointing out (see figure C). (CAUTION Use only SODA KING Super-Chargers.) Then screw back cap of charge holder. Do not use force; it is not necessary to screw cap on tightly.
5  Screw Syphon head on the bottle snugly so that both parts come together but do not use force. Do this with bottle standing on table or sink to avoid spilling.
6  To puncture Super-Charger and to charge the Syphon push down charging button (marked A in figure D) with heel of hand (see figure E); or give button a tap with palm of hand. Some people find it easier to push charging button against edge of kitchen sink or table. (See figure F.)
NOTE:  Charging does not start until pressure on button is released. You will then hear carbonating gas entering water which indicates that Super-Charger has been punctured.
7  Shake Syphon vigorously for 30 seconds so that carbonating gas and water are thoroughly mixed. THE SYPHON IS NOW CHARGED."
On the same day of its purchase the plaintiff upon returning home first carefully read the instructions and then "followed them to the letter." The plaintiff testified that he screwed the top part and the bottom part "together tight." With the syphon resting on the table, he pushed the button to puncture the cartridge, and almost immediately thereafter the top part of the syphon was suddenly expelled, striking the plaintiff in the face.
The plaintiff in May of 1950 presented the syphon in its condition existing immediately after the mishap to an expert for a critical examination. Called as a witness by the plaintiff, the expert testified: "When I received this soda cartridge and this syphon bottle I made a cursory examination and it appeared to me as an engineer that it had not suffered any damage at the time I got it." He expressed the opinion that the syphon was well designed and stated that he did not discover any defect or imperfection in its construction. The *443 threads by which the top and bottom of the container are attached were not distorted or deformed.
The expert then explained that he subjected the syphon to a series of tests. He ascertained that it required one and 8/16 of a turn to engage completely the two parts of the syphon. He appropriately placed a scale around the syphon and pursued his tests by successively having the top and bottom parts in each instance 1/16 of a turn further apart, and it was not until the parts were 15/16 of a turn from tight that the top and bottom separated.
Then came the transcendent question: "Q. You did find out, did you, Mr. Sturges, when this bottle was operated in accordance with the instructions which were enclosed in it that it operated properly, is that correct? A. Yes, sir."
The evidence introduced by the defendant was confined to the fact that it had manufactured that type of syphon during the years from 1939 to 1941, 110,000 of them in all.
Counsel for the appellant relies heavily upon our decision in Alston v. J.L. Prescott Co., 10 N.J. Super. 116 (App. Div. 1950), in which we discussed at some length the so-called doctrine of res ipsa loquitur. The factual backgrounds revealed by the evidence in that case and in the present one are significantly dissimilar.
It must be immediately recognized that it requires more than proof of the mere occurrence of an accident to set the rule of res ipsa loquitur in operation. Does the proof presented on behalf of the plaintiff in the present case do more than that?
The phrase res ipsa loquitur means "the thing itself speaks," but what does the "thing" say? Somewhat broadly stated, the "thing" which speaks is the unusual occurrence, but it must "speak" of the reasonable probability that the injury sustained by the plaintiff was in all the circumstances due to a dereliction of duty on the part of the defendant. Bahr v. Lombard, Ayres & Co., 53 N.J.L. 233 (E. & A. 1890); Noonan v. Great Atlantic, &c., Tea Co., 104 N.J.L. 136 (E. & A. 1927); Dunn v. Hoffman Beverage Co., *444 126 N.J.L. 556 (E. & A. 1941); Kramer v. R.M. Hollingshead Corp., 5 N.J. 386, 392 (1950).
We must view the illustration of the present case as it was portrayed by the evidence offered on behalf of the plaintiff. The representations are that the syphon was well designed and constructed. It was in perfect condition when received by the merchant at some time between 1940 and 1945. It remained in the charge and custody of the merchant until May 28, 1949. But moreover, no defects, structural weaknesses or deficiencies in its manufacture were discoverable in it after the accident. When used in conformity with the accompanying instructions of the manufacturer it operated properly.
Oddly we here face a case in which the plaintiff submitted uncontradicted evidence which excluded any reasonable inference that the defendant had been negligent in the manufacture of the article and left only the inference that the accident was caused by the manner in which the plaintiff himself prepared the contents of the syphon and assembled its parts.
In the Alston case we remarked (supra, at p. 124): "Res ipsa loquitur is certainly in all jurisdictions a common sense appraisal of the probative value of circumstantial evidence, and it is true that circumstantial evidence is ineffectual where the circumstances are equally consistent with freedom from wrong, and fail to reveal at least the probability that the particular injurious mishap would not have occurred without the culpable carelessness of the defendant. Vide, Galbraith v. Busch, 267 N.Y. 230, 234, 196 N.E. 36 (Ct. of A. 1935)."
Assuredly the creation of a mere opportunity to guess the cause of the mishap is an insufficient basis for the invocation of the rule.
Moreover our courts have over a span of years uniformly said: "This principle is that when through any instrumentality or agency under the management or control of a defendant or his servants there is an occurrence, injurious *445 to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords prima facie evidence that there was want of due care." Mumma v. Easton and Amboy R.R. Co., 73 N.J.L. 653, 65 A. 208 (E. & A. 1906).
Again in the Alston case we stated: "The pivotal question appertains to whether in the present case the bottle continued to be under the management or control of the defendant at the time of the accident within the modernly expanded scope of the rule of res ipsa loquitur."
While we recognized that "the progressive technological developments in modern times are introducing many new devices and operational methods which were unknown to past generations, thus broadening the field to which the applicability of the so-called doctrine is to be determined," we also realized that the element of the defendant's control over the instrumentality certainly at the time of the defendant's inferential negligent act or omission must continue to be regarded as indispensable.
We conclude that the proofs in the present case fail to reveal at least the probability that the particular injurious mishap would not have occurred without the culpable carelessness of the defendant.
Judgment affirmed.