14 N.J. Super. 290 (1951)
81 A.2d 803
RUSSELL FRANCISCO, PLAINTIFF-APPELLANT,
v.
MARY C. MILLER AND LOLA M. WALKEY, EXECUTRICES OF THE WILL OF CHARLES M. HERMAN, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1951.
Decided June 5, 1951.
*292 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. James R. Laird argued the cause for appellant (Mr. John A. Hartpence, of counsel).
Mr. William H.D. Cox argued the cause for respondents (Messrs. Cox & Walburg, attorneys).
*293 The opinion of the court was delivered by JAYNE, J.A.D.
By way of a preface to the discussion of the subject matter of the present appeal it is informative to disclose that the plaintiff instituted this action ex delicto against the executrices of the will of Charles M. Herman, deceased, and against the Asbury Park National Bank and Trust Company. At the inception of the trial the plaintiff submitted to a voluntary dismissal of his alleged cause of action against the latter defendant, and at the conclusion of the evidence introduced by the plaintiff and the defendants, the trial judge directed the entry of a judgment in favor of the executrices of the estate of the decedent. The propriety of the action of the trial judge in the respect last mentioned is the basic subject transported to us for determination.
The evidence described the occurrence of a very unfortunate mishap. For present purposes the narrative need only be summarized.
One Charles M. Herman, the mortgagee of the premises known as the Hotel Whitfield at Ocean Grove, Monmouth County, was destined to reacquire the ownership of the property, and he engaged the services of the plaintiff, a carpenter, to make certain alterations of the building to conform with the governmental fire protection requirements applicable to hotels of such conformation.
One of the proposed alterations involved the conversion of a window on the fourth floor of the west wing of the building into a doorway opening on the platform approximately four feet by four feet of an iron fire escape which for some period of time had existed beneath the window and formed a bridge over the alleyway which separated the two wings of the hotel building. It was intended to provide an emergency passageway from the west wing to the roof of the east wing and to the ladder of a fire escape leading to the ground.
On June 7, 1950, while pursuing a preliminary examination of the proposed alterations, Mr. Herman first stepped *294 out of the window onto the platform of the fire escape, and when the plaintiff, who immediately followed him, came upon it, the platform collapsed. Both Mr. Herman and the plaintiff fell to the surface of the alleyway beneath, resulting in the death of Mr. Herman and bodily injury to the plaintiff.
The paramount question projected for solution by the present appeal pertains to whether in the existing state of the evidence voluntarily and purposefully introduced by the plaintiff, and in view of the theory and hypothesis of liability upon which the case was presented, the plaintiff can now avail himself of the rule of res ipsa loquitur.
In limine, we cogitate the significance of the following colloquy between the court and counsel for the plaintiff at the trial:
"The Court: Do you maintain that the theory of res ipsa loquitur is controlling?
"Mr. Laird: I say I could have utilized it. I have not proceeded on res ipsa loquitur. I have produced to this Court direct evidence. Res ipsa loquitur is where there is no direct evidence available and the plaintiff is therefore handicapped and the defendant is the only one that knows.
"The Court: I understand. I just wanted to make sure that I understood you as to just what you were relying on."
The plaintiff furnished the explanatory evidence that the "platform over a period of years became badly corroded, especially at the points where it entered * * * the wall  and that corrosion so deteriorated the metal that it just took away its suction so that when a load was applied to it it broke. It wasn't strong enough to carry it." "The weather would do it, for one thing."
It was amid the introduction of evidence to disclose the corroded condition of the bars which entered the side of the building and the points at which the fractures actually occurred that counsel for the defendant remarked, "If the Court please, I am perfectly willing to accept the answer that it (the examination of the bars) corroborated the fact that it deteriorated and broke. I will concede that because there is no question in my mind that that is what happened."
*295 The subject of res ipsa loquitur has been somewhat elaborately discussed in the recent cases of Kramer v. R.M. Hollingshead Corp., 5 N.J. 386 (1950), and Alston v. J.L. Prescott Co., 10 N.J. Super. 116 (App. Div. 1950), in which the authoritative sources of information relating to the so-called doctrine are indicated.
The pragmatical rudiment of the legal presumption or inference of res ipsa loquitur is the circumstance that the causative facts of the anomalous accident are solely within the knowledge of the defendant and are not known to the plaintiff. The plaintiff is not under a primary obligation to exhaust all available means such as interrogatories, depositions or pretrial hearings to elicit the specific acts or omissions of the defendant, and his failure to do so does not eliminate the application of the res ipsa loquitur rule. Menth v. Breeze Corporation, Inc., 4 N.J. 428, 437 (1950).
However, where the plaintiff proceeds (whether pleaded or not) definitely and specifically to prove all of the facts and circumstances which proximately caused the occurrence of the accident, there are no accommodations for the application of the rule of res ipsa loquitur. Dentz v. Pennsylvania Railroad Co., 75 N.J.L. 893 (E. & A. 1908); Hochreutener v. Pfenninger, 113 N.J.L. 317 (E. & A. 1934); Cleary v. Camden, 118 N.J.L. 215 (Sup. Ct. 1937), affirmed 119 N.J.L. 387 (E. & A. 1938); Sibley v. City Service Transit Co., 1 N.J. Super. 199 (App. Div. 1949), affirmed 2 N.J. 458 (1949).
Res ipsa loquitur where applicable imports that the plaintiff has made out a case from which the jury may infer negligence without any direct proof of actionable negligence. Bien v. Unger, 64 N.J.L. 596 (E. & A. 1900); Moran v. Moore-McCormack Lines, 131 N.J.L. 332 (Sup. Ct. 1944), affirmed 132 N.J.L. 171 (E. & A. 1944); Den Braven v. Meyer Brothers, 1 N.J. 470, 474 (1949); Marzotto v. Gay Garment Co., 11 N.J. Super. 368 (App. Div. 1951), affirmed 7 N.J. 116 (1951).
*296 We need not express an opinion concerning the prima facie sufficiency of the evidence of negligence if the plaintiff had rested merely upon proof of the decedent's control over the platform of the fire escape and its collapse upon its use by the plaintiff at the invitation of the decedent. See Smith v. Jackson, 70 N.J.L. 183 (Sup. Ct. 1903); Sefler v. Vanderbeek & Sons, 88 N.J.L. 636 (E. & A. 1916); Thompkins v. Burlington Island, &c., Co., 102 N.J.L. 411 (E. & A. 1926).
The rejection of the rule of res ipsa loquitur does not mean that the plaintiff was precluded from showing the negligence of the defendants' decedent by circumstantial or direct evidence of conditions and acts or omissions from which his liability might have been logically inferred. Menth v. Breeze Corporation, Inc., supra.
And so, in the case sub judice the issue produced by the evidence was whether in the established and acknowledged circumstances and in recognition of all the inferences favorable to the plaintiff that could logically and legitimately be drawn therefrom, the negligence of the defendants' decedent was tentatively sustained by prima facie proof.
We shall assume that the plaintiff occupied the legal status of an invitee. Vide, Painter v. Hudson Trust Company, 2 N.J. Misc. 1137, 1139 (Sup. Ct. 1924). We shall also respect the stipulation of counsel that the defendants' decedent was a mortgagee in possession of the premises and in control of them on the date of the occurrence of the mishap.
It is an elementary principle of law that one who invites persons to come upon his premises is under a duty to exercise ordinary care to render the premises reasonably safe for such purpose. Phillips v. Library Co., 55 N.J.L. 307 (E. & A. 1893); Griffin v. De Geeter, 132 N.J.L. 381 (E. & A. 1945); Schumann v. Horn & Hardart Baking Co., 8 N.J. Super. 153 (App. Div. 1950).
Although the owner or occupier of the premises is not an insurer, he is liable for the injurious consequences suffered by an invitee by reason of defects of which he has *297 knowledge or of defects which have existed for so long a time that, by the exercise of reasonable care, he had both an opportunity to discover and to remedy. Schnatterer v. Bamberger & Co., 81 N.J.L. 558 (E. & A. 1911); Thompson v. Giant Tiger Corp., 118 N.J.L. 10 (E. & A. 1937); Daddetto v. Barbiera, 4 N.J. Super. 479 (App. Div. 1949); Oelschlaeger v. Hahne & Co., 2 N.J. 490 (1949); Restatement, Torts, N.J. Anno. § 343 (1940).
It is within the compass of the above-mentioned principles of duty and liability that we consider the probative scope of the evidence in the present case.
Assuredly it could not have been reasonably inferred by the jury from any of the evidence that the decedent had actual notice or knowledge of the obscure defective condition and nevertheless fraudulently concealed his knowledge and deliberately jeopardized his own safety.
Our inquiry therefore necessarily converges upon the question whether in any logical aspect of the evidence the defective condition had existed for so long a time that, by the exercise of reasonable care by the defendants' decedent, he had both the opportunity to discover and to remedy it.
The fractures of the angle bars supporting the platform occurred within the outer surface of the side of the building. The plaintiff's expert explained:
"Q. And in order to see whether or not any corrosion was taking place at that point, somebody would have had to climb up underneath there and chipped the stucco out to see whether there was corrosion there? A. That's right.

* * * * * * * *
Q. This portion which fell to the alleyway and which has been shown to you in photographs marked Exhibits P-2, P-7 and P-6, how was that supported to the building? A. Apparently it entered through the stucco and was supported by some means that I couldn't see inside. I believe that it was bearing on the wall."
The inference is irresistible that the corrosion of the angle bars was indiscoverable except by means of some extraordinary investigation.
*298 We recognize that there are conditions of disrepair and deterioration which, from their very nature and character, do not come into existence coincident with the happening of the accident but must in the light of common experience have progressed by slow and gradual steps during a somewhat lengthy period of time. Ordinarily the measurement of the period of time which would in the circumstances of the particular case have afforded the party chargeable with the care and maintenance a reasonable time to inspect and repair is a matter for the determination of a jury. Stark v. The Great Atlantic, &c., Tea Co., 102 N.J.L. 694 (E. & A. 1926).
Yet it is entirely conceivable that in some cases the question of whether the undisputed period of time sufficed to constitute a reasonable opportunity for the owner or occupier to have inspected and remedied the dangerous condition is properly to be determined by the court. Schnatterer v. Bamberger & Co., supra.
In the present case although it was conceded that Mr. Herman had formerly conducted the hotel for a span of 33 years, it was not revealed that the fire escape was erected or attached to the building during his previous occupancy. There was no evidence disclosing who constructed the fire escape platform or when it was constructed. On or about May 15, 1947, he conveyed the property to one James, and in the transaction he accepted a purchase money mortgage which he subsequently pledged with the Asbury Park National Bank and Trust Company. In the summer or fall of 1949 the payment of the mortgage debt became delinquent and foreclosure proceedings were instituted and prosecuted by the bank. Arrangements were made whereby if the bank became the purchaser at the foreclosure sale, the mortgaged premises would be reacquired by the mortgagee Herman. On April 21, 1950, James, the mortgagor, acknowledged his inability to rescue the property from the approaching foreclosure sale and resolved to surrender the keys of the hotel to Mr. Herman, the mortgagee.
*299 Mr. Herman could not be certain that he would resume the ownership of the property until the sale which was held on May 29, 1950, at which the bank was the successful bidder. Promptly after the sale he undertook to make the alterations and repairs to enable him to open the hotel for business during the ensuing summer season. The accident occurred on June 7, 1950, the ninth day after the sale. The defects were not conspicuous but latent.
We are of the opinion that fair-minded men would not logically infer and honestly resolve that in all the uncontroverted circumstances of the present case the defendants' decedent was guilty of culpable neglect in not observing a defective condition so hidden in such a period of time and thus failed to exercise the care and precaution commonly employed by a person of reasonable foresight, vigilance, and prudence. Vide, Gentile v. Pub. Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951). In the existing state of the evidence we conclude that it properly devolved upon the court to declare the judgment which the law imposed.
Judgment affirmed.