## The Cleveland, Cincinnati, Chicago & St. Louis R. R. Co. v. Naomi F. David.

1. NEGLIGENCE—*Sounding Whistle While Passing under an Overhead Bridge upon Which a Buggy is Passing.*—It is culpable negligence for an engineer to sound a locomotive whistle while passing under an overhead bridge upon which he sees a buggy crossing.

**Trespass on the Case**, for personal injuries. Appeal from the Circuit Court of Edgar County; the Hon. HENRY VAN SELLAR, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

GEORGE F. McNULTY, C. S. CONGER and R. L. McKINLAY, attorneys for appellant.

H. S. TANNER and F. W. DUNDAS, attorneys for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

Appellee brought this suit against appellant to recover damages for injuries sustained by her in being thrown from her buggy, after her horse, which she was driving over an

overhead bridge, had become frightened at one of appellant's moving engines. The negligence charged in the declaration was failure on the part of appellant's servants operating the engine to give proper notice or signal of the approach of the engine whereby appellee could have avoided driving upon the bridge until the engine had passed, and the driving of the engine with great speed and with loud and startling noises under the bridge, whereby her horse became frightened and ran away. A trial by jury resulted in a verdict and judgment in her favor for $1,000.

While some complaint is made on the score of erroneous instructions and admission of improper evidence, counsel for appellant urge chiefly, as grounds for reversal, that appellant was guilty of no negligence in the management of its engine, and that appellee was not in the exercise of proper care for her own safety when injured.

At the place in question, appellant's railroad runs east and west. The overhead wagon bridge which spans it is seventy-six feet long, seventeen feet wide and twenty-four feet above the rails of the track, and passes over the track at right angles. On the day appellee was injured, she was driving a single horse attached to a buggy. The evidence shows that a passenger train going east passed a few minutes before she reached the bridge. That train was followed by a freight train. Supposing the way was clear, appellee drove upon the bridge and did not discover until about half way over, that an engine, with a caboose attached, was coming from the west, following the other two trains. It was then close to the bridge and moving rapidly. She testified that it came with but little noise until just as it reached the bridge, when, and while passing under it, the whistle suddenly sounded and steam escaped, making such noise as to frighten her horse and cause him to run away. In the runaway, the buggy was upset and she was thrown out, receiving thereby very serious injuries. She is corroborated by a witness named Wilkin, who was riding in a wagon about 300 feet behind her. Wilkin testified that he heard no warning of the engine's approach by bell or whis-

tle until it reached the bridge, and that the whistle sounded just as the engine reached the bridge and while under it. Both the engineer and fireman admitted that the appellee was in plain view while crossing the bridge, and that they saw her when 250 feet away. They denied, however, that the whistle sounded either just before reaching the bridge or while passing under it. This, we regard as the vital frictional point in the case. If the engineer, after seeing this old lady driving along the bridge, sounded his whistle when his engine was under her, as testified by appellee and Wilkin, his conduct was grossly culpable. He must have known from his experience, as well as from common sense, that the sharp blasts of an engine whistle directly under a horse passing over an overhead bridge would have the effect of frightening the horse and rendering it unmanageable. It is true there was a whistling post about two hundred feet east of the bridge, and that at this post it was his duty to begin a statutory signal for the next grade crossing. But the testimony of appellee and Wilkin shows that he did not wait until the post was reached, and the jury evidently believed them. In the conflict upon this point, it was the peculiar province of the jury to find the truth.

We are unable to see wherein appellee failed to exercise the care of an ordinarily prudent person. Appellant's road was a single track road. The point in question was two miles from a station. She had just seen two trains pass, one following closely behind the other, when she reached the bridge approach. Hearing no other train, she was justified in supposing that no other would come until she had passed over. From the peculiar conditions surrounding the approach, her view of the track was obstructed until she was well on the bridge. And it was not until she was well on the bridge that she knew of the presence of the engine. All she could then do was to keep her horse quiet and under control until the engine passed. Because of the age of the horse and his gentle disposition, this she could have done, doubtless, had it not been for the sharp blasts of the whistle, which the engineer recklessly sounded immediately before reaching and while under the bridge.

We do not care to discuss the question as to whether the conditions were such as to make the duty of appellant's engineers to give warning of a train's approaching this overhead bridge, or the conflict in the testimony as to whether such warning was given in this case. Independent of appellant's duty in that regard, we think that the culpable act of the engineer in sounding the whistle at the bridge, after seeing appellee with her horse drive over, fixed the liability of the company.

No error was committed by the trial court in ruling upon evidence. Appellee only asked for three instructions and while the first one is open to some criticism, we are unable to see how it could have produced any harmful effect upon the jury, in view of the liberal instructions given for appellant and the fact that the negligence which rendered appellant liable was the act of the engineer after reaching the bridge.

As to the contention of appellant that the trial court erred in refusing one of its instructions offered, it is sufficient for us to say that the court gave in behalf of appellant twenty-eight instructions—certainly enough in number to cover every conceivable point in this case, or any other. We see no reversible error in the record and we think that substantial justice has been done.

Judgment affirmed.