AMOS MUMMA, PLAINTIFF IN ERROR, v. THE EASTON AND AMBOY RAILROAD COMPANY ET AL., DEFENDANTS IN ERROR.

Submitted December 12, 1905—Decided November 19, 1906.

1. Reversible error is apparent in any judgment record where an entry would indicate that the plaintiff below had suffered a voluntary nonsuit after the case was given to the jury and the jury had retired. But, if that be the only error complained of, and the course of the trial, as shown by the evidence and ruling sent up with the bill of exception, should further indicate that the entry is untrue, an amendment in the lower court might be permitted.

2. (*a*) The maxim "*res ipsa loquitur*," as defined in our courts, considered and applied; (*b*) The rule that, where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury, stated and applied.

3. Cases in other jurisdictions considered and applied, or distinguished.

4. When, at the close of the plaintiff's case, the evidence might support the conclusion that a servant of the defendants, while in charge of a locomotive engine, without cars attached, standing under or creeping out from under a highway bridge, caused the engine whistle to be sounded, and steam to be emitted suddenly, and without reason, so far as disclosed by the evidence, and that by or through such act a horse passing over the bridge was frightened and a traveler suffered serious bodily injury—*Held*, that under both or either of the principles discussed, a judgment of nonsuit ought to be reversed and for nothing holden.

In tort.  On error to the Supreme Court.

This was an action of tort brought in the Supreme Court by the plaintiff in error, plaintiff below, against the defendants in error, defendants below.

The plaintiff, in his declaration, averred that on the 30th day of June, A. D. 1903, the defendants were the proprietors and operators of a certain railroad, with its equipment, in the township of Bethlehem, Hunterdon county; that a certain public highway crossed the railroad by an overhead bridge, near the village of Bloomsbury; that on the day aforesaid he was a passenger, riding in a carriage drawn by one horse over and along the said highway, and while crossing the said bridge, and directly over the railroad tracks, the servants of the defendants carelessly, negligently and unnecessarily blew the whistle of a locomotive engine which was directly under the said bridge and caused a large amount of steam to be ejected under and around the horse, whereby the horse became frightened and overturned the carriage, and the plaintiff was violently thrown out upon the ground, by means whereof the plaintiff was bruised and injured, and became and is sick, sore and lame, and so will continue to be, and has been, is and will be hindered from attending to his business and deprived of the gains thereof, and forced to expend moneys in and about his care and cure, to the damage of the plaintiff, &c.  The defendants pleaded that they were not guilty of the grievances charged.

The issue joined between the parties was sent down to the Hunterdon Circuit for trial before one of the justices and a jury.

At the trial the plaintiff offered evidence which, so far as need now be stated, tended to establish the case following:

The plaintiff was about fifty-seven years of age, and for some time before his accident had been employed by the International Harvester Company as a traveling demonstrator and salesman. On June 30th, 1903, he was at Abel's hotel, at Bloomsbury, expecting to see one John S. Pickel (whose place of abode was on the further side of the railroad) about the sale of a thresher or binder to Henry Housel, a resident in that neighborhood. After the mid-day dinner, or a little later, Housel, being in a hurry, undertook to convey the plaintiff in his carriage to Pickel's house, or hotel. The horse was shod in the usual manner and the carriage was an open, four-wheeled vehicle, with tires of metal—not rubber. In driving towards Pickel's abode they first crossed the railway tracks of the Central Railroad Company of New Jersey, and then approached the overhead highway bridge mentioned in the declaration. This bridge was an ordinary country bridge, over a railway cut; was wide enough for two vehicles to pass thereon; was floored with planks, which were about twenty feet above the rails, and was open at the sides save for the iron railings or gratings. As Housel and the plaintiff approached the bridge on their outward way, they stopped, looked and listened, but saw and heard nothing. They crossed the bridge and reached Pickel's house safe; he not being at home, they soon turned about and set forth on the return to Bloomsbury. As they approached the bridge in this direction they drove down a slope, crossed a low or flat place in the road, and then made a sharp ascent to the bridge. By reason of the side of the cut, the men could not see the railroad tracks, or any engine or car that might be standing thereon under the bridge or close thereto on either side, until they were actually upon the bridge, or nearly so. A field of growing corn upon the right or east side also interfered with their view of the railroad. When within a few paces of the

bridge Housel stopped his horse or drew him down to a slow walk. Nothing being seen or heard by either man, they drove upon the bridge, and had gone a little beyond the middle of it when the whistle of a locomotive engine standing upon the rails beneath was blown three or four times, and the engine moved slowly eastward, emitting steam which came up in clouds through the cracks between the planks and enveloped the horse and men. The animal crouched, plunged, breaking the harness, and ran away. The plaintiff was thrown out of the carriage as they descended the slope away from the bridge and sustained, besides bruises, a fracture of his arm, a compound fracture of the tibia and a displacement of the knee-cap. He had not recovered from his injuries at the time of the trial—December 13th, 1904—and doubt was expressed by the medical witnesses respecting his recovery at any later day. The plaintiff had lost his position with the harvester company by reason of inability to do the work which he had formerly done.

When the plaintiff rested a motion for a nonsuit was made on behalf of the defendants, on the grounds that the defendants were not shown to have been guilty of any negligence in the operation of the railroad, and that the plaintiff was guilty of contributory negligence. This motion was granted by the court on the former ground, for the reasons that it was not shown that the engineman knew that any persons were crossing the bridge, and that it was not shown that the whistle was blown where the engineman had no right to blow it or was not bound to blow it. To this ruling an exception was prayed and sealed.

Judgment was entered upon the nonsuit, and thereupon a writ of error was sued out. Error was specially assigned in that the judgment was contrary to law because the evidence showed that the defendants were guilty of negligence, which resulted in injury to the plaintiff.

For the plaintiff in error, *William C. Gebhardt.*

To blow a whistle or let off steam, under the circumstances revealed by the proofs, whether the engineman knew that the

plaintiff was passing over the bridge or not, was such negligence as to require explanation or excuse from the defendants.

On the proofs made by the plaintiff there was a question for the jury whether the engineman must not have heard the horse and carriage upon the bridge, and thus have been aware of the presence of travelers.

For the defendants in error, *H. Burdett Herr.*

No negligence was shown which would entitle the plaintiff to recover.

The opinion of the court (the foregoing statement of the case having been made) was delivered by

GREEN, J. 1. In our examination of the case we are at once confronted by this portion of the judgment record: "That the jurors * * * went from the bar of the court to consider of their verdict * * * and after the said jurors had considered thereof and agreed among themselves, they returned to the said bar to give their verdict in this behalf, upon which the said Amos Mumma comes not, nor does he further prosecute his suit," &c.

This entry would indicate that the plaintiff below had suffered a voluntary nonsuit after the case had been given to the jury and the jurors had retired. Such a course was permissible to a plaintiff at common law (*Bauman* v. *Whiteley,* 28 *Vroom* 487, 489), but was forbidden in our practice—first, by rule of the Supreme Court, and later by positive statute. See, now, *Pamph. L.* 1903, *p.* 580, § 160. For such error in the record, a reversal at the hands of this court would be proper. See *Rollins* v. *Atlantic City Railroad Co.,* 41 *Vroom.* 664, 667 (1904). Nevertheless, were the judgment otherwise to be sustained, we might refrain from reversing on this ground alone, because a glance at the printed case shows that the entry is untrue, the plaintiff having been nonsuited, by order of the presiding justice, before any evidence was offered by the defendants, and, of course,

before the case was given to the jury. Under such circumstances the *postea* and judgment might, and doubtless would, be amended in the Supreme Court. See 1 *Tidd* (*9th Eng. ed.*) 713, 714; 2 *Id.* 942; 1 *Chit. Arch. Pr.* (*12th Eng. ed.*) 545, 547; *Apgar's Administrator* v. *Hiler,* 1 *Zab.* 808 (1854).

2. On a closer examination of the record and of the evidence sent up with the bill of exception, we think that there are two legal principles which, singly or together, might and should have controlled the action of the learned trial justice on the motion to nonsuit. These principles may· be briefly set forth.

*a.* The first is found in the maxim, *"res ipsa loquitur"*—literally translated, "the thing itself speaks." This principle is that when through any instrumentality or agency under the management or control of a defendant or his servants there is an occurrence, injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords *prima facie* evidence that there was want of due care. See *Thomp. Negl.,* §§ 15, 7635; *Smith Negl.* *246; *Skinner* v. *Railway Company,* 5 *Exch.* 787, 789 (1850); *Scott* v. *London Dock. Co.,* 3 *Hurlst. & C.* 596, 601 (1865); *Excelsior Electric Co.* v. *Sweet,* 28 *Vroom* 224, 227, 229 (1894); *Sheridan* v. *Foley,* 29 *Id.* 230, 232, 233 (1895); *Consolidated Traction Co.* v. *Thalheimer,* 30 *Id.* 474, 476 (1896); *Bergen County Traction Co.* v. *Demarest,* 33 *Id.* 755, 756 (1898); *Shay* v. *Camden and Suburban Railway Co.,* 37 *Id.* 334, 335 (1901); *Paynter* v. *Bridgeton, &c., Traction Co.,* 38 *Id.* 619, 625 (1902).

*b.* The second principle—or, better, rule—is that where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury. See *Thomp. Tr.,* §§ 1664–1666; *Thomp. Negl.,* § 7634; *Pennsylvania Railroad Co.* v. *Matthews,* 7 *Vroom* 531, 532 (1873); *Bahr* v. *Lombard & Ayres Co.,* 24 *Id.* 233, 236

(1890); *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton,* 26 *Id.* 342, 344 (1893). This rule is particularly applicable to cases involving negligence, inasmuch as negligence is not so much a fact in itself as a logical inference from a collocation of facts. See *Whart. Negl.,* § 420; *Thomp. Negl.,* § 7634; *Thomp. Tr.,* § 1663; *Central Railroad Co.* v. *Moore,* 1 *Zab.* 824, 832 (1854); *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605, 607, 608 (1893); *Traction Company* v. *Scott,* 29 *Id.* 682, 685, 686 (1896).

Reviewing the evidence on the part of the plaintiff with these principles in mind, we perceive that it tended to establish this state of facts: The servant of the defendants, in charge of a locomotive engine (seemingly without cars attached), caused the whistle of the engine to give forth sound, and steam to be emitted, suddenly, while under a highway bridge, where travelers might lawfully be passing, and might be expected to be passing, with horses and vehicles; and this the servant did when no statutory or other rule, so far as the evidence disclosed, appeared to require the blowing of the whistle. Through this act of the defendants' servant injury befell the plaintiff.

Such a *prima facie* case, made by the plaintiff, properly called for explanatory evidence, at the least, on the part of the defendants. So to hold will put the present case in accord with *Sheridan* v. *Foley,* 29 *Vroom* (1895) (at *pp.* 232, 233); *Trenton Passenger Railway Co.* v. *Cooper,* 31 *Id.* 219, 221 (1897); *Bergen County Traction Co.* v. *Demarest,* 33 *Id.* (1898) (at *pp.* 756, 757). If the act of the servant—the engine-driver— were unusual, and emphasis be laid upon this characteristic, then to hold that because of the unusual act or occurrence the defendants were required to put in explanatory, if not exculpatory, evidence, will also harmonize the present case with *Bahr* v. *Lombard & Ayres Co.,* 24 *Id.* 233, 238, 239 (1890); *Bittle* v. *Camden and Atlantic Railroad Co.,* 26 *Id.* 615, 622 (1893); *McCann* v. *Consolidated Traction Co.,* 30 *Id.* 481, 484 (1896); *Ayars* v. *Camden and Suburban Railway Co.,* 34 *Id.* 416, 419

(1899). See, also, *M. S. J. & A. Ry. Co.* v. *Fullarton,* 14
*C. B.* (*N. S.*) 54, 56, 58 (1863).

Furthermore, the case so made by the plaintiff was one
upon which he was entitled to have a finding by a jury,
because, whether the facts proved on his part spoke of action-
able negligence by the defendants or not, was at least a
matter debatable by fair-minded men. See *Mahnken* v.
*Freeholders of Monmouth,* 33 *Vroom* 404, 407 (1898).
The question was not what the trial judge would infer from
the evidence, but whether the jury might legitimately con-
clude that the proofs of the plaintiff showed the defendants
to have been negligent. See *Newark Passenger Railway Co.*
v. *Block,* 26 *Id.* 605, 607, 608 (1893); *Traction Company* v.
*Scott,* 29 *Id.* 682, 685, 686 (1896).

Inasmuch as the nonsuit was not based upon the ground
of contributory negligence in the plaintiff, it is scarcely nec-
essary to say that if there were any negligence on the part of
Housel, the owner and driver of the horse, such negligence
was not imputable to the plaintiff, who appears to have been
riding by invitation only. See *Noonan* v. *Consolidated Trac-
tion Co.,* 35 *Vroom* 579 (1900). But, in granting the non-
suit on the ground that the defendants had not been shown
to be guilty of any negligence, the learned trial justice did
not, as we think, allow sufficient force to both or either of the
principles above mentioned, and therefore the nonsuit should
not stand.

3. A few cases arising in other jurisdictions may now be
considered and applied, or distinguished.

*Pennsylvania Railroad Co.* v. *Barnett,* 59 *Pa. St.* 259,
265 (1869). In this case the plaintiff below sued for dam-
ages sustained through the negligent blowing of the whistle
of an engine, drawing a passenger train on the defendant's
road, while under a highway bridge over which the plaintiff
was passing. There was a verdict, and judgment thereon for
the plaintiff below, and a writ of error sued out by the rail-
road company. The Supreme Court affirmed the judgment,
and said: "The sounding of the alarm whistle, as the train
was passing under the bridge, was the cause of the horses

becoming frightened and running away, and the injury to the plaintiff was the result. This was an act of gross negligence and a sufficiently proximate cause of the injury to make the company liable therefor." This case has been cited as an authority in this court, in 26 *Vroom* (at *p.* 622).

*Cleveland, Cincinnati, Chicago and St. Louis Railroad Co.* v. *David,* 105 *Ill. App.* 69, 70, 71 (1902). In this case negligence was averred in causing the blowing of the whistle and the escape of steam when an engine, with a caboose attached, was moving rapidly towards and under an overhead wagon bridge, across which the plaintiff below was driving. There was a verdict and a judgment for the plaintiff, and on error it was urged for reversal, chiefly, that the defendants had been guilty of no negligence in the management of their engine. Affirming the judgment, the court said: "From the peculiar conditions surrounding the approach, her view of the track was obstructed until she was well on the bridge, and it was not until she was well on the bridge that she knew of the presence of the engine. All that she could then do was to keep her horse quiet and under control until the engine passed. This she could have done, because of the age of the horse and his gentle disposition, had it not been for the sharp blasts of the whistle, which the engineer recklessly sounded immediately before reaching and while under the bridge."

The most noticeable difference between the facts brought out in the Illinois case and in the case under consideration lies in this—that in the one it is not certain that the engine-driver knew more than the probable or possible nearness of travelers, or certain that the engine was in motion, and in the other he did know of the actual presence of one upon the overhead bridge, and the engine was moving rapidly.

*Mitchell* v. *Northern Central and St. Louis Railway Co.,* 100 *Tenn.* 329, 330, 333 (1897). This was an action for damages for blowing, under a highway bridge, the whistle of a passing engine, which frightened the plaintiff's mules and caused them to run away, throwing him out and injuring him. When the plaintiff's evidence had been offered the

defendant demurred thereto, and the question of negligence went to the court, which ruled against the plaintiff. On error, in the Supreme Court, it was said, in reversing the lower court: "That a blowing under a bridge is, in the absence of some special necessity therefor, an unnatural and reckless act, likely to cause great damage. * * * The proof of such a blowing, under such circumstances, is sufficient to authorize a presumption of negligence. The onus is shifted, to explain and excuse or justify it, upon him who does it."

Similar as these three cases are to the case in hand, it is obvious, when the underlying facts are borne in mind,. that they go even further in imposing legal liability for negligence than we now find it necessary to go. We might hesitate to hold that a *prima facie* case of negligence is made out on showing that a whistle was sounded and steam was permitted to escape under a highway bridge while an engine (especially one drawing a train) was passing along a railroad, and yet be ready to hold negligence or not a question for a jury, in a case like the present, wherein the proofs might justify a conclusion. that. the whistle was sounded and steam permitted to escape, suddenly, while an engine, without a train attached, was standing under, or creeping out from under a highway bridge. In the former case, the senses of sight and hearing might warn man and beast of the approach of the engine and train before the whistle was sounded; in the latter, there would be surprise without warning.

Clearly, the decisions, of which *Lamb* v. *Old Colony Railroad Co.,* 140 *Mass.* 79, 81 (1885), and *Phillips* v. *New York Central Railroad Co.,* 84 *Hun* 412, 415 (1895), are examples, are not inconsistent with the views which we now entertain. In these cases the respective defendant companies were held free from liability for negligence because it was shown, either by the plaintiff's own proofs or by the defendants', that the "firing up" and giving out smoke, complained of in the former case, and the blowing of the whistle, complained of in the latter, were acts necessary and lawful under the circumstances.

Furthermore, if the distinction between a moving train and a standing locomotive engine be kept in mind, there is nothing inconsistent with our present views in the cases of *Cincinnati, Indianapolis, St. Louis and Chicago Railway Co.* v. *Gaines,* 104 *Ind.* 526 (1885), criticised in 100 *Tenn.* (at *p.* 331); *Farley* v. *Harris et al., Receivers,* 186 *Pa. St.* 440 (1898), and *Kelsey* v. *New York, &c., Railroad Co.,* 181 *Mass.* 64 (1901). It need only be said that these cases all hold that the sounding of the whistle of the locomotive engine of a running train, while crossing a road or street, either above or below the grade thereof, is not of itself negligence.

4. Whether we should hold that proof of the sounding of the whistle and the emission of steam, when an engine of a running train is passing under or over a public way, is not evidence of negligence *per se,* following the three cases above mentioned, or whether we should hold that such proof presents a *prima facie* case of negligence, following the case cited from 100 *Tenn.,* is a matter not now before us, and upon it we express no opinion.

Suffice it now to say that the proofs in the case under review might support the conclusion that the servant of the defendants, while in charge of a locomotive engine, without cars attached, and standing under or creeping out from under a highway bridge, caused the whistle to be sounded and steam to be emitted, suddenly, and without reason, so far as disclosed by the evidence, and that by or through such act a horse passing over the bridge was frightened and a traveler suffered serious bodily injury. Wherefore, applying the principles discussed, or either of them, we hold that a jury question was raised, and that the judgment of nonsuit should be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 13.