11 N.J. Super. 368 (1951)
78 A.2d 394
FRANK MARZOTTO, PLAINTIFF-RESPONDENT,
v.
GAY GARMENT CO., A NEW JERSEY CORPORATION, DEFENDANT, AND 54-62 SUMMER AVE. CORP., A NEW JERSEY CORPORATION, AND NATHAN PECKERMAN, INDIVIDUALLY AND TRADING AS GAY GARMENT CO., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1950.
Decided January 25, 1951.
*370 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Jerome S. Lieb argued the cause for defendant-appellant 54-62 Summer Ave. Corp. (Messrs. Harkavy & Lieb, attorneys).
*371 Mr. Bernard Shurkin argued the cause for defendant-appellant Nathan Peckerman.
Mr. Leonard Estrin argued the cause for plaintiff-respondent (Mr. Joseph P. Dallanegra, attorney).
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
Judgment against defendant 54-62 Summer Ave. Corp. and defendant Nathan Peckerman and in favor of the plaintiff was entered in the Superior Court, Law Division, upon jury verdict. Each of these defendants appeals.
At about 6:30 A.M. on September 5, 1947, while the plaintiff was standing on the sidewalk in front of 54 Summer Avenue, in Newark, a pane of glass fell out of a window on the third floor front of the premises, struck the plaintiff and injured him. The defendant 54-62 Summer Ave. Corp. was the owner of the premises and the defendant Nathan Peckerman was a tenant under lease of the portion of the third floor of the premises from which the pane of glass fell. The complaint charged the defendants with control of the window involved and with negligence in failing to perform the duty of keeping the premises in a reasonably safe condition.
There was testimony that examination of the window less than an hour after the accident disclosed that one whole pane of glass was gone from the lower section of the window and that there was no putty in the window. The tenant or one of his employees opened and closed the window each day and occasionally washed the inside. The lease provided:
"* * * And at the expiration of the said term, or the termination of this lease, the said party of the Second Part will quit and surrender the premises hereby demised, in as good a state and condition as reasonable use thereof will permit, damage by the elements excepted.

* * * * * * *
"The party of the second part shall take good care of the premises and shall at its own cost and expense paint and redecorate the interior and that the landlord shall make exterior repairs.

* * * * * * *
"In case of any damage or injury occurring to the glass in the demised premises or damage and injury to the said premises of any *372 kind whatsoever, said damages or injury being caused by the carelessness, negligence, or improper conduct on the part of the said party of the second part, its agents or employees, then the said party of the second part shall cause the said damage or injury to be repaired as speedily as possible at its own cost and expense. * * *"
The owner argues, first, that the court erred in denying its motion for judgment at the end of the case, because the owner owed no duty to the plaintiff as to the window involved. The owner relies upon the rule that the occupier and not the landlord is bound as between himself and the public so far to keep buildings in repair that they may be safe for the public, and such occupier is prima facie liable to third persons for damages arising from any defect. McKeown v. King, 99 N.J.L. 251 (E. & A. 1923); Ross v. Tetradis, 7 N.J. Super. 224 (App. Div. 1950).
It is the duty of the owner of a building abutting upon a public highway to maintain it in such a condition that it shall not become dangerous to the traveling public. An exception to this general rule occurs where the owner, by lease, vests a tenant with exclusive possession, thereby depriving himself of the power of entry to make repairs, in which case the owner is not liable to a passer-by if the building or a part thereof, due to a condition of disrepair arising in the course of the tenant's occupancy, fall upon and injure the passer-by. In so far as the owner reserves control of the premises to the extent necessary to make repairs, his duty to the public, in relation to such part of the property, of maintaining it in a safe condition continues. Spinelli v. Golda, 6 N.J. 68 (1950); McKeown v. King, above; Appel v. Muller, 262 N.Y. 278, 186 N.E. 785 (Ct. of App. 1933); 1 Tiffany, Real Property, (3d ed. 1939), § 108; Restatement, Torts, §§ 377, 378; 138 A.L.R. 1078; 89 A.L.R. 480; 7 A.L.R. 204.
We agree with the court below that this owner owed a duty to the traveling public of reasonable care in the maintenance and repair of the window, because it reserved control over such part of the property by virtue of the provision of the lease concerning the making of exterior repairs and the *373 specific provision concerning glass. Cf. Spinelli v. Golda, above; White v. Ellison, 5 N.J. 228 (1950); Walsh v. Southwestern Bell Telephone Co., 331 Mo. 118, 52 S.W.2d 839 (Sup. Ct. Mo. 1932); Appel v. Muller, above; Friedl v. Lackman, 136 Ohio St. 110, 23 N.E.2d 950 (Sup. Ct. Ohio 1939).
The owner argues, next, that the court erred in denying its motion for judgment at the end of the case because there was no proof of any negligence by the owner, and the doctrine of res ipsa loquitur did not apply because the owner did not have sole control of the pane of glass involved, citing Gildea v. Harris Fine Realty & Const. Co., 292 N.Y.S. 55 (App. Div. 1936), and Bain v. New York Majestic Corp., 31 N.Y.S.2d 434 (App. Div. 1941).
In the Gildea and Bain cases, the court held: "Since there were two persons who may have been the cause of this accident, the landlord or the tenant, each of whom may have been independently negligent, res ipsa loquitur does not apply." This holding is contrary to the rule in our State set forth in Meny v. Carlson, 6 N.J. 82 (1950), and to the general rule set forth in 65 C.J.S., Negligence, § 220(8); and apparently was repudiated by the New York Court of Appeals in the later case of Schroeder v. City and County Sav. Bank, 293 N.Y. 370, 57 N.E.2d 57 (1944). In the Schroeder case the New York Court of Appeals held that the res ipsa loquitur doctrine applied to three independent defendants who were in control of the instrumentality which caused the damage, stating: "It is not necessary for the applicability of the res ipsa loquitur doctrine that there be but a single person in control of that which caused the damage."
Aside from the fact that the absence of putty in the window was some evidence of negligent maintenance, the doctrine of res ipsa loquitur applied to this owner, since it reserved control of the part of the premises involved. The fact that no one had sole control of the instrumentality in this case, because control was shared by the owner and the tenant, does not prevent the application of the doctrine to both the owner and the tenant. "The word `exclusive' when *374 used to define the nature of the control necessary to invoke the doctrine of res ipsa loquitur does not connote that such control must be several and the defendant singular and never plural." Meny v. Carlson, above; 65 C.J.S., Negligence, § 220(8). Cf. Kelly v. Laclede Real Estate and Invest Co., 155 S.W.2d 90, 138 A.L.R. 1065 (Sup. Ct. Mo. 1941). As Professor Prosser states it: "Furthermore, it is entirely possible that the inference of negligence may arise against each of two or more parties who share control  as where each is under an obligation to inspect, and the defect is one which could have been discovered by such inspection." Prosser on Torts, (1941), ch. 7, § 43.
Lastly, the owner argues that the trial court erred in its charge concerning the effect of the application of the res ipsa loquitur doctrine. The court charged:
"* * * Now, since under the proof here, members of the jury, it appears that this window pane fell from its framework and struck the plaintiff, under the law an inference of negligence arises against both of these defendants.

* * * * * * *
"The presumption of negligence on the part of these defendants or the inference of negligence on the part of these defendants having come into existence here, it is incumbent upon the defendants to explain that they exercised reasonable care in the maintenance of this window. It is your duty as jurors to take into consideration all the facts disclosed by the evidence as well as the inference of negligence that I have told you has arisen against the defendants and to decide whether or not the plaintiff has sustained the burden imposed upon him of establishing by the preponderance of the evidence that one or both of these defendants were negligent, and that that negligence was the proximate cause of the accident and of his injuries." (Italics ours.)
In dealing with the doctrine of res ipsa loquitur, in respect to the situations in which it should be applied (Alston v. J.L. Prescott Co., 10 N.J. Super. 116 (App. Div. 1950)), we commented on the diversity of opinion thereon discoverable in the English and American cases, in the textbooks and in the law review articles, and gave illustrative citations. We deal here, not with the situations in which the doctrine should be applied, but with the more troublesome question of the mechanics of its operation when it does apply. The citations *375 in the Alston case, mentioned above, are also enlightening on the question before us.
In our State, however, the mechanics of the operation of the rule have been stated clearly in Wildauer v. Rudnevitz, 119 N.J.L. 471 (E. & A. 1938): "In actions for negligence where the maxim res ipsa loquitur applies, the trial judge may hold that the circumstances are such as will, unexplained, permit the jury to draw the inference of negligence, but that inference is for the jury and not for the court." Professor Prosser states: "The majority of the American courts regard res ipsa loquitur as nothing more than one form of circumstantial evidence. * * * This usually means that the inference of negligence to be drawn from the circumstances is left to the jury. They are not compelled to find it. The plaintiff escapes a nonsuit, or a dismissal of his case; but no burden of introducing evidence is cast upon the defendant, in the sense of a directed verdict against him if he fails to do so  if he introduces no evidence at all, the jury may still find in his favor." Prosser on Torts, (1941), ch. 7, § 44. In 173 A.L.R. 880, in discussing the question before us, the note commentator says:
"The question of the precise operation or consequence of the doctrine of res ipsa loquitur is made difficult by the variety of expressions by the court in the many cases in which the doctrine has been invoked. One of the outstanding problems is whether the doctrine permits or gives rise to a presumption of negligence, or merely a permissible inference thereof. Perusal of the cases on this point reveals a serious conflict, due perhaps to the somewhat loose expressions by the court in applying the doctrine or discussing its effect. But in cases where conscious effort was made to distinguish and determine the consequences of the doctrine, and particularly in cases of more recent origin, the majority of the courts favor the view that res ipsa loquitur merely warrants or justifies the drawing of an inference of negligence, and does not create a presumption of negligence so as to compel a finding thereof in the absence of explanation by the defendant."
Also see cases gathered in 173 A.L.R. 874. But see Res Ipsa Loquitur by Shain (1945), in which the author argues that a different result should be reached, based upon his analysis of a large number of English and American cases, statements of textbook writers and law review articles.
*376 We think the court below erred in its charge to the jury because it charged, in effect, that the facts of the occurrence compelled an inference of negligence instead of leaving for the jury the question whether the inference of negligence should be drawn; and also erred in charging that the application of the res ipsa loquitur doctrine made it "incumbent upon the defendants to explain that they exercised reasonable care in the maintenance of this window." It is true that the court below also charged:
"* * * On the other hand, you members of the jury are the sole and exclusive judges of the facts, of the weight of the testimony, of the credibility of the witnesses, of the inferences to be drawn from the facts, and of the ultimate conclusions to be reached on all of the facts.

* * * * * * *
"If the greater weight of the evidence satisfies you that either one or both of these defendants failed to comply with or to fulfill that duty then the one who failed or both, if you so find, would be guilty of negligence, and if that negligence was the producing and efficient cause of the fall of the pane of glass from the window and of the plaintiff's injury then such defendant or defendants would be liable to the plaintiff.

* * * * * * *
"Now, if after consideration of all the evidence you are satisfied that the greater weight of evidence shows the negligence of one or both of these defendants which produced this accident then you will turn to the question of damages * * *."
At best, two statements of the law were made to the jury, one of which was erroneous. In such a situation it will not be presumed that the jury followed the correct instruction, but the judgment will be reversed on appeal. Pucci v. Weinstein, 8 N.J. Super. 247 (App. Div. 1950).
The tenant argues only one point, namely, that there was no proof of any negligence by the tenant and the doctrine of res ipsa loquitur did not apply, because control of the instrumentality was in more than one person.
It was the duty of the tenant to keep the demised premises in a safe condition, and an agreement by the owner to make repairs did not relieve the tenant from this duty. Spinelli v. Golda, et al., above. As pointed out above, the *377 mere fact that control of the instrumentality is in more than one person does not prevent the application of the doctrine to those in control. Here the control was in both the owner and tenant and the doctrine applies to both, despite the fact that neither had sole control.
Since we have concluded that there must be a reversal as to the owner because of prejudicial error in the charge, we believe that, upon terms, there should be a reversal as to the tenant also, because the prejudicial error in the charge affected both owner and tenant equally. At the conclusion of the court's charge, the owner made known to the court the error in the charge complained of (as required by Rule 3:46), excepted thereto and argued it on its appeal, but the tenant made no objection.
In McKeown v. King, above, one defendant had taken exception to the court's charge, but abandoned it on appeal; and the Court of Errors and Appeals held that a co-defendant who had not excepted thereto could not, on his appeal, avail himself of error in the charge. In Overend v. Kiernan, 5 N.J. Misc. 704 (Sup. Ct. 1927), one defendant had taken exception to the court's charge, but took no appeal; and the court held that a co-defendant who had not excepted thereto could not, on his appeal, take advantage of the exceptions taken by his co-defendant. In this case, however, the owner not only made proper objection to the error in the charge, but the question was briefed and argued before us by both owner and plaintiff.
The purpose of the rule requiring that an appellant must make known to the court below his objection to the action of the court, in order to preserve his right of appeal thereon, is to put the court on notice that its action is challenged, and give it an opportunity to correct the error, if any. Here, this error was called to the court's attention by the owner and we think it most unlikely that a further objection by the tenant, on the ground briefed and argued before us, would have resulted in any different action thereon.
"Rules of court, however, are devised as a method of facilitating the correct and orderly exposition of substantive law, *378 and the proper administration of justice, and when for any reason they cease in actual practice to accomplish that function, their efficacy as rules pro tanto cease, and such an equitable construction or application will be accorded them, as will effectuate the manifest design and purpose of their framers." Lambert v. Trenton and Mercer, &c., Corp., 103 N.J.L. 23, 25 (Sup. Ct. 1926).
We think it would be contrary to the spirit of our new rules if we were to affirm the judgment against the tenant in this case on the technical ground that he failed to properly object to the error in the charge, while reversing the judgment against the owner, for the same error, because such a result would defeat the end of substantial justice. Cf. McCarthy v. General Electric Co., 49 P.2d 993, 100 A.L.R. 1370 (Or. Sup. Ct. 1935). Since the plaintiff did not induce the error in the charge, and the tenant failed to comply with the technical requirements of our rules, we think it only just that reversal as to the tenant be conditioned upon his payment of the plaintiff's costs on his appeal.
The judgment is reversed as to the defendant 54-62 Summer Ave. Corp., with costs to abide the event; and the judgment is reversed as to the defendant Nathan Peckerman if he pays to the plaintiff the plaintiff's costs on his appeal within 30 days after service of a bill of costs upon him, otherwise the judgment against the defendant Nathan Peckerman is affirmed.
JAYNE, J.A.D. (dissenting).
Notwithstanding my high regard for the unanimity of opinion of my two associates, I am unable to concur in the conclusion that the charge of the trial judge in this case was so manifestly erroneous, prejudicial, and harmful as to require a reversal of the judgment. In such a situation, I am obliged to file a memorandum of the reasons for my dissent. Rule 4:4-6.
Initially I understand it to be the established rule that "when the charge of the court, taken in its entirety, presents the law fairly and clearly, so that the jury cannot reasonably be thought to have been misled by the instructions, there is *379 no ground for reversing the judgment, though some of the expressions, when standing alone, might be regarded as erroneous." Redhing v. C.R.R. Co., 68 N.J.L. 641 (E. & A. 1903); Larsen v. Raritan Valley Farms, Inc., 109 N.J.L. 363 (E. & A. 1932); Johnson v. Central Railroad Co., 111 N.J.L. 93 (E. & A. 1933); Simons v. Lee, 117 N.J.L. 370 (E. & A. 1937).
Otherwise expressed, "although sentences in a charge may, if read apart from their connection, need some qualification to render them accurate, yet if the qualification be given in the context so that the jury cannot reasonably be thought to have been misled by the charge, taken in its entirety, there is no error." Merklinger v. Lambert, 76 N.J.L. 806 (E. & A. 1908); J.D. Loizeaux Lumber Co. v. O'Reilly, 104 N.J.L. 510 (E. & A. 1928).
Then again, somewhat differently phrased  "If in his charge to the jury the judge uses a word or a phrase the very opposite of which he intends, and his true intent and meaning are to be gleaned from the other parts of the charge, and if upon the whole charge the jury cannot reasonably be thought to have been misled, there is no error." (Syllabus) State v. Timmerari, 96 N.J.L. 442 (E. & A. 1921).
It is a rule equally well settled that where two distinct propositions are charged, one correct and the other erroneous, neither of which is expressly withdrawn, so that the jury cannot decide which is right, there is consequently reversible error in the record. State v. Tapack, 78 N.J.L. 208 (Sup. Ct. 1909); Collins v. Central R.R. Co., 90 N.J.L. 593 (E. & A. 1917); Brown v. Public Service Ry. Co., 98 N.J.L. 747 (E. & A. 1923); Pucci v. Weinstein, 8 N.J. Super. 247 (App. Div. 1950).
Perhaps basically our diversity of opinion arises in the application of the one or the other of the aforementioned rules to this particular case.
I presume that the underscored or italicized phrases of the excerpts taken from the judge's charge and reproduced in the majority opinion are intended to exhibit the error deemed to necessitate the judgment of reversal.
*380 It will be expedient for me to reduplicate them with my brief comments.

I.
"* * * Now, since under the proof here, members of the jury, it appears that this window pane fell from its framework and struck the plaintiff, under the law an inference of negligence arises against both of these defendants."
I understand that in the opinion of the majority the use of the verb "arises" is regarded as inapt and incongruous. In our preliminary research embracing the cited English and American decisions and the informative law review articles in Alston v. J.L. Prescott Co., 10 N.J. Super. 116 (App. Div. 1950), we recognized that in such a context that identical verb was commonly employed.
We have heard the former Court of Errors and Appeals say, "The unexplained presence upon the public highway of this `runaway' motor truck, without driver or occupant, moving along the highway to the far side thereof, mounting the curb and doing serious physical injury to a person lawfully there, raises a prima facie presumption of negligence * * *." Sheridan v. Arrow Sanitary Laundry Co., 105 N.J.L. 608, 611 (E. & A. 1929). In Glicken v. Bergman, 117 N.J.L. 306 (E. & A. 1936), the Court of Errors and Appeals (on p. 309) used with evident approval the phrase "was deemed to raise" the presumption.
Chief Justice Gummere, then Justice, sitting with Chief Justice Beasley and Justice Reed, in Sheridan v. Foley, 58 N.J.L. 230 (Sup. Ct. 1895), said: "In such cases the maxim `res ipsa loquitur' is held to apply, and it is presumed, in the absence of explanation by the defendant, that the accident arose from want of reasonable care. * * * This brick could not have fallen of itself, and the fact that it fell, in the absence of explanation by the defendant, raises a presumption of negligence."
I decline to believe that the jury would have had any different understanding, had the judge said that the law *381 "affords" an inference of negligence. Mumma v. Easton and Amboy Railroad, 73 N.J.L. 653 (E. & A. 1906).
"In tort liability, a falling object is the common circumstance calling for the invocation and application of the doctrine of res ipsa loquitur." Cleary v. Camden, 118 N.J.L. 215 (Sup. Ct. 1937), in which a number of such cases are collated.
Immediately following the excerpted passage of the charge which is regarded as improper, the court stated:
"Where it appears that an agency or an instrumentality or an object such as this pane of glass is in the control of the defendants and there is an occurrence injurious to the plaintiff which in the ordinary course of things would not take place if the person or persons in control were exercising due care, the occurrence itself in the absence of explanation by the defendants provides prima facie evidence that there was want of reasonable or due care." (Emphasis mine.)
The foregoing passage, I think, is an unexceptionable statement of the law.

II.
"The presumption of negligence on the part of these defendants or the inference of negligence on the part of these defendants having come into existence here, it is incumbent upon the defendants to explain that they exercised reasonable care in the maintenance of this window. It is your duty as jurors to take into consideration all the facts disclosed by the evidence as well as the inference of negligence that I have told you has arisen against the defendants and to decide whether or not the plaintiff has sustained the burden imposed upon him of establishing by the preponderance of the evidence that one or both of these defendants were negligent, and that that negligence was the proximate cause of the accident and of his injuries."
Elsewhere in his instructions the judge stated:
"On the other hand, you members of the jury are the sole and exclusive judges of the facts, of the weight of the testimony, of the credibility of the witnesses, of the inferences to be drawn from the facts, and of the ultimate conclusions to be reached on all of the facts.

* * * * * * *
"Now, whereas here a plaintiff seeks a recovery of damages against defendants on a claim of negligence the law imposes upon him the *382 burden of establishing his claim and his damages by the greater weight of the believable evidence, by what is sometimes called the preponderance of the evidence. In the absence of such proof there can be no recovery. The right to a verdict comes into existence only when the burden of proof, as I have just explained it to you, has been met.

* * * * * * *
"If the greater weight of the evidence satisfies you that either one or both of these defendants failed to comply with or to fulfill that duty then the one who failed or both, if you so find, would be guilty of negligence, and if that negligence was the producing and efficient cause of the fall of the pane of glass from the window and of the plaintiff's injury then such defendant or defendants would be liable to the plaintiff." (Emphasis mine.)
It is obvious that the judge properly and definitely placed the burden of proof of negligence upon the plaintiff and assured the jurors that they were the "sole and exclusive judges" of "the inferences to be drawn from the facts and of the ultimate conclusions to be reached on all the facts."
The judge did say that "to decide whether or not the plaintiff has sustained the burden" of establishing the negligence of one or both of the defendants by a preponderance of the evidence it was their duty "to take into consideration" all of the facts disclosed by the evidence including the res ipsa inference.
I deduce from the majority opinion the conviction that the doctrinal rule of res ipsa loquitur is only to be recognized in the determination by the court of motions for a dismissal of the action and for a judgment at the conclusion of the testimony and that any reference to that rule of evidence in the charge to the jury is improper. I cannot coincide with that idea because it blindly ignores the legendary origin and realistic permanence of the so-called doctrine. Prior to the declaration of the doctrine, jurors did not suppose that they were privileged under the law to impose liability upon anyone unless there was some proof of the specific culpable cause of the mishap. In the complete absence of such evidence, the unexplained and unaccountable occurrence was characterized as a pure accident or act of God. Hence, judges for generations have in the appropriate cases informed the jurors of the *383 permissible inference of culpability which the law "raises" or "affords" from the circumstances of the occurrence itself.
In the present case the baneful and malignant infirmity in the charge is said to be the declaration of the judge to the jury that in considering "all of the evidence," "all of the facts," "the inferences to be drawn from the facts," "the weight of the testimony," "the credibility of the witnesses," and in formulating "the ultimate conclusions to be reached," the jurors should also "take into consideration" the res ipsa inference of negligence in deciding "whether or not the plaintiff has sustained the burden imposed upon him of establishing by the preponderance of the evidence that one or both of these defendants were negligent and that that negligence was the proximate cause of the accident and of his injuries."
I do not discover in that instruction any justifiable reason in this case to repudiate the assertions of Justices Trenchard, Parker, and Perskie made in Galbraith v. Smith, 120 N.J.L. 515 (Sup. Ct. 1938), viz: "True, defendant is always entitled to go forward, as she did in the case at bar, with explanatory testimony to negative the inference of negligence, but the inference remains nonetheless, and should be considered by the trier of the facts. Thus, under the circumstances here exhibited, it might well have been that, notwithstanding a consideration of the inference raised by the invocation of the doctrine of res ipsa loquitur, the trier of the facts might have concluded that defendant had exercised due care and thus incurred no liability. But the conceded failure to consider that inference, along with the other proved facts, was harmful and prejudicial error."
This appeal resembles that taken in Cleary v. Camden, supra, in which the appellate court remarked: "To pick out a sentence of the court's charge, or a part of a sentence, or a paragraph of the charge, without regard to the charge of the court as a whole * * * is not the proper method of determining whether the court committed reversible error. The orderly and proper procedure is to study the charge of the court, with due regard to the issues and proofs, in its entirety as delivered. Does the charge as so delivered fairly *384 and accurately state the law applicable? `Would ordinary men and jurors understand the instruction as a whole?' Kargman v. Carlo, 85 N.J.L. 632, 638, 90 A. 292, 295; Lyon v. Fabricant, 113 N.J.L. 62, 67, 172 A. 567."
The judgment in this case does not appear to be unjust. Nothing in the record persuades me that the jury was misled in concluding that some one or both of the defendants were negligent in allowing a pane of glass over which such defendant had control to fall from the window upon the plaintiff.
I agree that the trial judge might have prudently and precautiously advised the jury that with respect to all inferences, they were at liberty to select or reject according to the dictates of their own judgment.
I cannot acquiesce in the notion that in a case of circumstantial evidence the court commits reversible error in instructing the jurors to "take into consideration" all of the legitimate inferences and reasonable probabilities, unless the court also instructs the jury that in their assortment of the inferences and probabilities so considered, they can exercise discrimination in selecting some and rejecting others. To me, it is unimaginable that jurors who are informed by the court that they "are the sole and exclusive judges of the facts, of the weight of the testimony, of the credibility of the witnesses, of the inferences to be drawn from the facts, and of the ultimate conclusions to be reached on all of the facts" need to be additionally informed that in the performance of that function they can accept some and reject other "inferences" in arriving at the "ultimate conclusions." Unlike my colleagues, I am unable to discern any basis for their conclusion that the court's charge "compelled" the jury to adopt without choice the res ipsa inference of negligence.
But in reviewing judicial action on appeal, the unity of pragmatical acceleration and academic precision may be recognized as a cherished ideal, but during the period of progression toward that visionary destination, the limitations of human capacities of circumspection should not be ignored.
To declare that a trial judge in referring to the doctrine, principle, maxim, rule of res ipsa loquitur commits reversible *385 error in a charge delivered to a jury of laymen in that he employed the phrase "presumption of negligence" instead of "inference of negligence," or used both phrases, seems to me to be too sophistical. Alston v. J.L. Prescott Co., 10 N.J. Super. 116, 119 (App. Div. 1950).
I am constrained in the present case respectfully to dissent from the conclusion of the majority and I vote to affirm. In consequence, I refrain from any comment upon the action of the majority in also reversing the judgment against the tenant.